**Dora HULTZMAN, Appellant,**

v.

**Caspar WEINBERGER, Secretary of Health, Education and Welfare, Appellee.**

**No. 73–1917.**

United States Court of Appeals, Third Circuit.

Argued Feb. 25, 1974.

Decided April 18, 1974.

Roland J. Artigues, Galfand, Berger, Senesky, Lurie & March, Philadelphia, Pa., for appellant.

Robert E. J. Curran, Michael B. L. Hepps, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before HUNTER and WEIS, Circuit Judges, and MILLER, District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This appeal involves the denial of Medicare coverage by the Secretary of Health, Education and Welfare ("HEW") for inpatient hospital services which the Secretary believed could have been rendered in a lesser care facility. Jurisdiction resides in this Court by virtue of 42 U.S.C. § 1395ff(c), 42 U.S.C. § 405(g) and 28 U.S.C. § 1291.

From July 13 through September 3, 1970, appellant, Mrs. Dora Hultzman, was hospitalized at the Albert Einstein Medical Center, Philadelphia, Pennsylvania, on the order of her family physician, Dr. Kravitz. Mrs. Hultzman, who was 73 years old at the time she was ad-

mitted to the hospital, had suffered from severe rheumatoid arthritis for many years. She had previously received therapy for her arthritis by Dr. Kravitz at the Moss Rehabilitation Center, a rehabilitation hospital. Mrs. Hultzman had felt increasing pain in the months preceding her hospitalization, and she had great difficulty in moving about, even with the aid of two canes. Dr. Kravitz noted in the discharge summary that she was completely helpless at the time of admission.

Although the primary purpose for the hospital admission was to receive physical and occupational therapy, Dr. Kravitz was equally concerned with several other ailments of Mrs. Hultzman: persistent iron-loss anemia, urinary tract infection, eye problems and previous gastrointestinal bleeding. Dr. Kravitz ordered hospitalization because Mrs. Hultzman "could not have gotten her treatment as an outpatient because she was non-ambulatory and she could not be transferred to a less acute facility such as Moss Rehabilitation Hospital because of the urinary problem and the anemia." Dr. Kravitz, who had previously treated Mrs. Hultzman at the Moss Rehabilitation Center, this time chose to treat her at the Albert Einstein Medical Center so that her many other ailments could be taken care of at the same time that she was receiving physical therapy.

Throughout Mrs. Hultzman's hospitalization, both Dr. Kravitz, her family and attending physician, and the utilization review committee of the hospital [1] certified that care in the hospital was medically necessary and that it was medically necessary for Mrs. Hultzman to remain in the hospital for as long as she did.

The patient progress notes show the following entry by Dr. Kravitz on September 1: "Pain unabated—patient seems to be trying very hard but we have reached an impasse." On September 3, Mrs. Hultzman was discharged from the hospital.

Subsequently, the hospital submitted a request for payment for services rendered to Mrs. Hultzman to appellee's fiscal intermediary, Blue Cross of Greater Philadelphia, which initially handles such a claim. Acting on behalf of the intermediary, Dr. H. Hopkins examined the medical records and concluded that there had been an "overutilization," i. e., that only during the first seven days of Mrs. Hultzman's hospitalization did she require inpatient hospital services and the remainder, which he concluded was mostly for physical therapy, could have been rendered in some lesser facility.

Concurring with Dr. Hopkins, the Hearing Examiner held that the hospital services provided to Mrs. Hultzman from July 13 to September 3, 1970, "were not reasonable and necessary inpatient hospital services and are specifically excluded from coverage [by 42 U.S.C. § 3195y [1395y](a)(1) ]." The Hearing Examiner's decision subsequently became the final decision of the Secre-

1. The legislative history of the Medicare statute provides a cogent summary of the structure and purpose of the utilization review committee:

"Hospitals and extended care facilities participating in the program would be required to have in effect a utilization review plan providing for a review of admissions to the institution, length of stays, and the medical necessity for services provided with the objective of promoting the efficient use of services and facilities. The review would ordinarily be carried out by a staff committee of the institution, which would have to include two or more physicians [except the attending physician] but which could also include other professional personnel such as registered nurses and medical social workers. Alternatively, the review could be conducted by a similar group outside the institution— preferably one established by the local medical society and some or all of the hospitals and extended care facilities in the locality. In some circumstances the review committee would have to be one outside the institution—for example, where the small size of the institution or, in the case of an extended care facility, the lack of an organized medical staff makes it impracticable for the institution to have a properly functioning staff committee." 1965 U.S.Code Cong. & Admin. News, p. 1988.

tary. On July 19, 1973, the district court upheld the Secretary, finding the decision to be supported by substantial evidence. This appeal followed. We reverse.

In drafting the Medicare legislation, Congress provided for benefits for "inpatient hospital services." 42 U.S.C. § 1395d(a)(1). This section contains only one condition: benefits are not payable beyond a maximum number of days in the hospital.[2] This limitation on the reimbursable length of stay is reinforced by a requirement that a "spell of illness" would continue until sixty days after discharge, thereby precluding coverage of a rehospitalization during that period. 42 U.S.C. § 1395x(a)(2).

The Medicare statute defines "inpatient hospital services" as follows:

"(b) The term 'inpatient hospital services' means the following items and services furnished to an inpatient of a hospital and (except as provided in paragraph (3) ) by the hospital—

"(1) bed and board;

"(2) such nursing services and other related services, such use of hospital facilities, and such medical social services as are ordinarily furnished by the hospital for the care and treatment of inpatients, and such drugs, biologicals, supplies, appliances, and equipment, for use in the hospital, as are ordinarily furnished by such hospital for the care and treatment of inpatients; and

"(3) such other diagnostic or therapeutic items or services, furnished by the hospital or by others under arrangements with them made by the hospital, as are ordinarily furnished to inpatients either by such hospital or by others under such arrangements . . . . ."
42 U.S.C. § 1395x(b).[3]

Certain "[c]onditions of and limitations on payment for services" are provided in 42 U.S.C. § 1395f. First, payment is conditional upon a physician certifying "that such services are required to be given on an inpatient basis for such individual's medical treatment, or that inpatient diagnostic study is medically required and such services are necessary for such purpose. . . ." 42 U.S.C. § 1395f(a)(3). The first such certification is to be made no later than the 20th day of the hospitalization and periodic recertifications are necessary thereafter. The legislative history reveals the importance Congress attached to the physician's certification:

"[T]he physician is to be the key figure in determining utilization of health services—and . . . it is a physician who is to decide upon admission to a hospital, order tests, drugs and treatments, and determine the length of stay. For this reason the bill would require that payment could be made only if a physician certifies to the medical necessity of the services furnished." 1965 U.S.Code Cong. & Admin.News, p. 1986.

Second, when inpatient hospital services extend beyond twenty days, payment is conditional upon periodic review by the utilization review committee as to the medical necessity of further inpatient hospital services. 42 U.S.C. § 1395f(a)(6) & (a)(7). Before the utilization review committee can find that further stay in the institution is not medically necessary, it must afford the attending physician an opportunity for consultation with the committee. 42 U.S.C. § 1395x(k)(4). The regulations of the Secretary outline the standard by

---

2. 42 U.S.C. § 1395d(a)(1) provides that benefits are payable for up to 90 days plus an additional 60 days if the patient so desires. The additional 60 days, however, are a lifetime reserve and are payable only to the extent they have not been used previously.

3. Subparagraph (3) quite clearly provides that physical therapy is included in the term "inpatient hospital services." The legislative history of the Medicare statute states that "[u]nder present law, health insurance payments may generally be made for physical therapy services when provided to an inpatient in a hospital. . . ." 1967 U.S. Code Cong. & Admin.News, p. 2909.

which the committee reviews the decision of the attending physician:

"Because there are significant divergences in opinion among individual physicians in respect to evaluation of medical necessity for inpatient hospital services, the judgment of the attending physician in an extended stay case is given great weight, and is not rejected except under unusual circumstances." 20 C.F.R. § 405.1035(g).

If after consultation with the attending physician, the utilization committee determines that further stay in the institution is medically unnecessary, it must promptly notify the hospital, the individual and the attending physician. 42 U.S.C. § 1395x(k)(4). Payment for inpatient hospital services continues, however, for three days following receipt by the hospital of the committee's determination. 42 U.S.C. § 1395f(a)(7). If the utilization review committee fails to function effectively, the statute provides that the Secretary may decertify the hospital, 42 U.S.C. § 1395cc (b)(2)(A), or upon notice the Secretary may deny reimbursement for inpatient hospital services rendered by that hospital after the 20th day of hospitalization. 42 U.S.C. § 1395cc(d). Wilbur Cohen, then Under-Secretary of HEW, testified prior to the passage of the Medicare legislation that, "[i]f the [utilization] review board makes a mistake, there is nothing we can do about it, because that is the professional decision of the doctors." [4] In response to questioning, he agreed that the utilization review committee's decision would be equivalent to a "supreme court decision." [5]

█ We fully agree with the Secretary that Congress, in enacting the Medicare legislation, sought to encourage the efficient and economical use of medical facilities. This does not explain, though, what method Congress chose to accomplish this objective. That Congress intended the utilization review committee to have the primary role in securing these objectives is evidenced by the legislative history as well as by the Secretary's regulations:

"The committee is particularly concerned that the utilization and review function is carried out in a manner which protects the patients while at the same time making certain that they remain in the hospital only so long as is necessary, and that every effort be made to move them from the hospital to other facilities which can provide less expensive, but equal, care to meet their current medical needs." 1965 U.S.Code Cong. & Admin.News, p. 1987.

20 C.F.R. § 405.1035(a) & (b)(2) provides:

"An acceptable utilization review plan provides for: (1) The review, on a sample or other basis, of admissions, duration of stays, and professional services furnished; and (2) review of each case of continuous extended duration."

\*  \*  \*  \*  \*  \*

"(2) The review plan of a hospital should have as its over-all objective the maintenance of high quality patient care, and an increase in effective utilization of hospital services to be achieved through an educational approach involving study of patterns of care, and the encouragement of appropriate utilization. It is contemplated that a review of the medical necessity of admissions and durations of stay, for example, would take into account alternative use and availablity of out-of-hospital facilities and services. The review of professional services furnished might include study of such conditions as overuse or under use of services, logical substantiation of diagnoses, proper use of consultation, and whether required diagnostic work-up and treatment are initiated and

4. Executive Hearings on H.R. 1 Before the House Comm. on Ways & Means, 89th Cong., 1st Sess., at 68 (1965).

5. Id.

carried out promptly. Review of lengths of stay might consider not only medical necessity, but the effect that hospital staffing may have on duration of stay, whether assistance is available to the physician in arranging for discharge planning, and the availability of out-of-hospital facilities and services which will assure continuity of care."

In furtherance of these goals Congress provided that the fiscal intermediary was to "assist the [hospital] in the application of safeguards against unnecessary utilization of services furnished" to individuals entitled to Medicare benefits. 42 U.S.C. § 1395h(b)(1)(B).

■ Nowhere, however, in the Medicare statute or in the legislative history is there any suggestion that Congress intended that the Secretary deny coverage retroactively to patients whenever he believes the utilization review committee has ceased to function properly. Indeed, the two express statutory remedies which are provided—decertification of hospital or denial of benefits beyond the 20th day of hospitalization—both foreclose retroactive effect because of the requirements that notice be given. 42 U.S.C. § 1395cc(b) & (d).

■ This construction of the Medicare legislation is not only the most sensible in our view, but is also one which will give effect to the broad remedial purpose of the statute, i. e., to insure that adequate medical care is available to the aged throughout this country.[6]

Lastly, we recognize that in certain limited situations Congress has authorized the Secretary to deny coverage for services which otherwise meet the requirements of the statute. These situations are enumerated in 42 U.S.C. § 1395y(a), the statutory section relied upon by the Secretary to support his decision. This section provides, *inter alia*:

"Notwithstanding any other provision of this subchapter, no payment may be made under part A or part B for any expenses incurred for items or services—

"(1) which are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member;

\* \* \* \* \* \*

"(9) where such expenses are for custodial care."

Subparagraph (9), pertaining to custodial care, was not a basis for the Secretary's exclusion of coverage, since the Hearing Examiner, whose decision became that of the Secretary's, agreed with the contention of Mrs. Hultzman's attorney that "the care [she] received *was not custodial* in nature." (Emphasis added.) Rather, the Secretary's decision was based on the Hearing Examiner's finding that the services rendered Mrs. Hultzman after July 12, 1970, "were not reasonable and necessary inpatient hospital services and are specifically excluded from coverage by [section 1395y(a)(1)]."

■ Were this finding based on a correct view of the law, we would agree with the parties to this appeal that the standard of review would be whether such a finding is supported by substantial evidence. 42 U.S.C. § 1395ff(c) & 42 U.S.C. § 405(g). We do not, however, think the Secretary has correctly interpreted section 1395y(a)(1), and therefore we are not bound by the Secretary's determination. *See, e. g.,* Social Security Board v. Nierotko, 327 U.S. 358, 369, 66 S.Ct. 637, 90 L.Ed. 718 (1946).

There is absolutely nothing in the record which would support a conclusion that the services rendered Mrs. Hultzman were not reasonable and necessary to the improvement of her arthritis or for the diagnosis or treatment of her other illnesses. All the evidence suggests to the contrary. Indeed, the Hear-

---

6. U.S.Code Cong. & Admin.News 1964; *see, e. g.,* Sowell v. Richardson, 319 F.Supp. 689, 691–692 (N.D.Ill.1970).

ing Examiner concluded that "it is apparent that [Mrs. Hultzman] was in need of these services."

Notwithstanding this conclusion, the Hearing Examiner held that "such services did not require hospitalization" but "could have been provided at the Moss Rehabilitation Center or another extended care facility;" thus they were not *"reasonable and necessary inpatient hospital services"* and are "excluded from coverage by [section 1395y(a)(1)]." (Emphasis added.)

■ The Secretary apparently construes section 1395y(a)(1) to mean that services which are admittedly reasonable and necessary for the treatment and diagnosis of a patient's ailments are nonetheless excluded from coverage if the Secretary determines that it was not reasonable and necessary to render those services in a hospital (as opposed to a lesser care facility). This construction of section 1395y(a)(1), however, cannot be sustained in the face of the clear and plain language of that section. Section 1395y(a)(1) excludes from coverage only those services which are not reasonable and necessary to the treatment or diagnosis of a patient's ailments. It does not speak at all to the question of whether it is medically necessary to provide such services on an inpatient or outpatient basis or in a hospital rather than extended care facility.[7] The only other court which to our knowledge has considered this question explicitly rejected the Secretary's construction of section 1395y(a)(1). Blacker v. Richardson, Civ.No. 2055, (D.Mont., Nov. 21, 1972), CCH Medicare & Medicaid Guide § 25, 613. The cases chiefly relied upon by the Secretary are inapposite because they all involve the question of whether services rendered were essentially supportive or custodial in nature and hence excludable under section 1395y(a)(9).

■ We therefore conclude that the Secretary erred in holding that Mrs. Hultzman was not entitled to have payment made on her behalf for the inpatient hospital services provided her from July 13 to September 3, 1970. The fifty-nine days Mrs. Hultzman spent in the hospital did not exceed the maximum permitted under the statute;[8] the services provided clearly come within the definition of "inpatient hospital services;"[9] the conditions of payment—certification by her attending physician and by the hospital utilization review committee—were fulfilled;[10] and the Secretary's reliance on section 1395y(a) was misplaced.

Consequently, the order of the district court of July 19, 1973 will be reversed with directions to the district court to enter judgment for the appellant.

---

7. The legislative history does not support the Secretary's construction of section 1395y(a)(1). *See* 1965 U.S.Code Cong. & Admin. News, p. 1989.

8. 42 U.S.C. § 1395d.

9. 42 U.S.C. § 1395x(b). We note that the Hearing Examiner stated that the services rendered to Mrs. Hultzman after July 12, 1970,

"were not 'inpatient hospital services' which are covered under [section 1395x(b)—definitional section] of the Social Security Act. Those services were not reasonable and necessary inpatient hospital services and are specifically excluded from coverage by [section 1395y(a)(1)]."

The statement referring to section 1395x(b) which defines "inpatient hospital services" is at best ambiguous, and we do not think it represents a finding that the services provided were not within the definition of inpatient hospital services. Not only is the record devoid of any evidence (much less substantial evidence) to support such a finding, but also a fair reading of the Hearing Examiner's report reveals that the Hearing Examiner justified denial of coverage solely on the basis that the services could have been provided in a lesser facility.

Moreover, this was the sole basis for which the fiscal intermediary refused to allow payment; the district court apparently viewed this as the sole basis for the Secretary's decision; and this has been the sole basis for the Secretary's argument on appeal.

See also the legislative history of section 1395x(b). 1965 U.S.Code Cong. & Admin. News, p. 1967–1968.

10. 42 U.S.C. § 1395f.