Michael B. TORPHY, Conservator of the person and Estate of Mary Jane Torphy

v.

Caspar WEINBERGER, Secretary of the Department of Health, Education and Welfare, an Agent of the United States of America.

Civ. A. No. 74–C–19.

United States District Court,
E. D. Wisconsin.

Nov. 7, 1974.

**1118**

Martin J. Torphy, Milwaukee, Wis., for plaintiff.

David B. Bukey, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

## DECISION AND ORDER

WARREN, District Judge.

Plaintiff, conservator of the person and estate of claimant Mary Jane Torphy, by this action seeks a review of a final decision of the Secretary of Health, Education and Welfare, entered on November 30, 1973, modifying and reversing in part a determination of the Hearing Examiner entered on July 26, 1973 relative to compensation for inpatient hospital services under Part A of Title XVIII of the Social Security Act, as amended. Jurisdiction resides in this Court by virtue of 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, and 42 U.S.C. § 1395ff(b), § 1869(b) of the Act.

From April 26 through June 30, 1971, claimant Mary Jane Torphy was hospitalized at St. Joseph's Hospital in Milwaukee, Wisconsin, on order of her physician, Dr. Anthony S. Kult. Miss Torphy, who was 79 years old at the time of her admittance, had fallen in the bathtub at her home and was unable to extricate herself until a neighbor discovered her predicament and aided her. (Tr. p. 44). Clinical evidence disclosed that claimant sustained injuries to the right hip and pelvis as well as the right thigh and forearm. (Tr. p. 45, 149). In addition, she was mentally confused, in severe pain, and she exhibited weakness on her left side, indicating the occurrence of a cerebrovascular accident or a stroke. (Tr. p. 45). She was diagnosed as suffering from hip injuries, cerebrovascular accident, weakness of the right side and diabetes mellitus (Tr. p. 79).

There exists no dispute as to the medical necessity for hospital admission inasmuch as a finding favorable to the claimant was made for the first 15 days of the inpatient hospital stay, i. e., from April 26 to May 10, 1971. Rather, the controversy herein centers about the adverse finding relative to coverage for the inpatient hospital services performed on May 11 through June 30, 1971, which services totaled $2,836.45 in cost.

On September 20, 1971, claimant was denied Medicare coverage for inpatient hospital services rendered from May 11 through June 30, 1971 on grounds that the type of care received on those dates did not require the continuous supervision of a professional nurse (Tr. p. 85). On February 28, 1972, plaintiff Michael Torphy requested a reconsideration of this decision on behalf of his ward (Tr. p. 86). The decision was affirmed by the Bureau of Health Insurance on February 29, 1972 (Tr. p. 88). Thereafter, on June 23, 1972, plaintiff requested a hearing before the Hearing Examiner (Tr. p. 31). The Hearing Examiner, however, in a decision dated July 26, 1973, concluded that claimant's continued hospitalization throughout the period at issue was medically necessary and that the services provided her during that period constituted covered inpatient hospital services. Accordingly, he ruled that she was entitled to have payment

made on her behalf for the services provided her from May 11 to June 30, 1971, on which date she was discharged (Tr. p. 23).

On its own motion, the Appeals Council undertook to review the decision of the Hearing Examiner (Tr. p. 12). In a decision entered on November 30, 1973, the Council determined that even though " 'reasonable and necessary' for diagnosis and treatment," the tests and treatment administered in a hospital were not covered if such services could have been rendered in a lesser care facility (Tr. p. 7). It therefore concluded that claimant's condition had stabilized by May 10 such that she could have been transferred to a lesser care facility and for that reason determined that the services rendered claimant from May 11 through June 30, 1971 were not "reasonable and necessary for the treatment of her condition," excluding payment for those services under § 1862(a)(1) of the Social Security Act, 42 U.S.C. § 1395y(a)(1). This determination stands as the final decision of the Secretary.

▆▆▆ The parties have submitted this matter to the Court on cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. 42 U.S.C. § 405(g), however, does not admit the use of summary judgment. Pippin v. Richardson, 349 F.Supp. 1365, 1367 (M.D.Fla., 1972); Weir v. Richardson, 343 F.Supp. 353, 354 (S.D.Iowa, 1972); Schoultz v. Weinberger, fn. 3, 375 F.Supp. 929 (E.D.Wis., 1974). Whereas summary judgment procedure allows new factual evidence to be submitted to the Court in the form of affidavits, section 405(g) contemplates review by the Court solely upon the pleadings and transcripts of the Secretary:

> . . . The court shall have power to enter, *upon the pleadings and transcript of the record,* a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. (emphasis added). 42 U.S. C. § 405(g).

No new evidence may be admitted before this Court in such a proceeding. Accordingly, the Court will treat plaintiff's motion for summary judgment as a motion for an order reversing the decision of the Secretary and defendant's motion for summary judgment as a motion for an order affirming the decision of the Secretary, both pursuant to Rule 7(b)(1) of the Federal Rules of Civil Procedure, and proceed to the merits of the case.

▆▆▆ By virtue of 42 U.S.C. § 405(g), the standard upon which a federal district court may review a final decision of the Secretary is limited to whether there exists substantial evidence in the record to support the Secretary's findings. Richardson v. Perales, 402 U.S. 389, 410, 91 S.Ct. 1420, 28 L. Ed.2d 842 (1971); Jeralds v. Richardson, 445 F.2d 36, 38 (7th Cir., 1971); Calvey v. Richardson, 358 F.Supp. 938, 939 (E.D.Wis., 1973); Weir v. Richardson, *supra,* 343 F.Supp. at 355. This standard precludes *de novo* review. Lahr v. Richardson, 476 F.2d 1088, 1090 (7th Cir., 1973); Moon v. Celebrezze, 340 F.2d 926, 930 (7th Cir., 1965); Harris v. Richardson, 357 F.Supp. 242, 243 (E.D.Va., 1973). However, the district court is not so bound with respect to the Secretary's conclusions of law. Conley v. Ribicoff, 294 F.2d 190, 194 (9th Cir., 1961); Carroll v. Social Security Board, 128 F.2d 876, 881 (7th Cir., 1942); Allen v. Richardson, 366 F.Supp. 516, 519 (E.D.Mich., 1973); Reading v. Richardson, 339 F.Supp. 295, 300 (E.D. Mo., 1972). Furthermore, if the Secretary fails to employ the correct legal standard in arriving at his conclusion, his findings may be overruled. Hultzman v. Weinberger, 495 F.2d 1276, 1281 (3rd Cir., 1974); Reading v. Richardson, *supra,* 339 F.Supp. at 300. Having reviewed the decision of the Appeals Council, the Court concludes that the Appeals Council premised *its* decision that the services rendered claimant from May 11 to June 30, 1971 were not covered upon a misinterpretation of 42 U. S.C. § 1395y(a)(1). In this respect, the

Court is persuaded by the rationale of the Third Circuit Court of Appeals in Hultzman v. Weinberger, *supra.*

Congress has provided that in certain limited situations Medicare coverage does not extend to services which otherwise meet the requirements of the Health Insurance for the Aged Act. These situations are enumerated in 42 U.S.C. § 1395y(a), which is the same statutory section relied upon by the Appeals Council as a basis for its decision. That section provides, *inter alia*:

(a) Notwithstanding any other provision of this subchapter, no payment may be made under part A or part B for any expenses incurred for items or services—

(1) which are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member;

. . . . . .

(9) where such expenses are for custodial care;

■ Although there is some evidence of record indicating that the inpatient services rendered Miss Torphy at St. Joseph's Hospital constituted custodial care, that evidence was obviously rejected by the Appeals Council, whose decision was not based upon subparagraph (9). The Council considered a medical interrogatory of Dr. Norbert Enzer, M. D., a medical consultant, in which he had stated that the services furnished claimant were custodial during the entire period of her hospitalization (Tr. p. 6). The Council, however, agreed with the Hearing Examiner that claimant required and received an inpatient hospital level of care from April 26 through May 10, 1971 (Tr. p. 8). Furthermore, as to those services rendered Miss Torphy from May 11, 1971 through June 30,

1971, for which the Council denied coverage, it found only that such care could have been afforded claimant in a lesser care facility (Tr. p. 8). Since care provided in a lesser care facility is not synonymous with "custodial care" but may also be subject to Medicare coverage under 42 U.S.C. § 1395d(a)(2),[1] see, e. g., Reading v. Richardson, *supra*, subparagraph (9) was not a basis for the Council's decision. Rather, coverage was denied solely on the basis that "the services furnished claimant by St. Joseph's Hospital from May 11, through June 30, 1971 were not reasonable and necessary for the treatment of her condition" (Tr. p. 8).

■ The rationale by which the Appeals Council arrived at this decision convinces the Court that the Council misinterpreted § 1395y(a)(1) and misapplied it to the facts. There is no evidence of record that the services rendered Miss Torphy were *in fact* unreasonable or unnecessary for the treatment of her condition. All the evidence suggests to the contrary. Nor did the Council make any such finding. In fact, the Council tacitly conceded that the services rendered Miss Torphy were medically reasonable and necessary for treatment of her condition but construed § 1395y(a)(1) to exclude coverage for such services if those services could have been provided in a lesser care facility:

It is the Appeals Council's opinion that Congress clearly intended that no payment be made for the expenses of inpatient hospital care where the specific tests and treatments (i. e., 'items and services'), *even though 'reasonable and necessary' for diagnosis or treatment*, could have been provided in a lesser facility or on an outpatient basis . . . . (emphasis added; Tr. p. 7).

1. § 1395d. Scope of benefits

(a) The benefits provided to an individual by the insurance program under this part shall consist of entitlement to have payment made on his behalf or, in the case of payments referred to in section 1395f(d)(2) of this title to him (subject to the provisions of this part) for—

\*    \*    \*    \*    \*

(2) post-hospital extended care services for up to 100 days during any spell of illness;

As determined by the Third Circuit Court of Appeals in Hultzman v. Weinberger, *supra*, this construction cannot be sustained:

> The Secretary apparently construes section 1395y(a)(1) to mean that services which are admittedly reasonable and necessary for the treatment and diagnosis of a patient's ailments are nonetheless excluded from coverage if the Secretary determines that it was not reasonable and necessary to render those services in a hospital (as opposed to a lesser care facility). This construction of section 1395y(a)(1), however, cannot be sustained in the face of the clear and plain language of that section. Section 1395y(a)(1) excludes from coverage only those services which are not reasonable and necessary to the treatment or diagnosis of a patient's ailments. It does not speak at all to the question of whether it is medically necessary to provide such services on an inpatient or outpatient basis or in a hospital rather than extended care facility. The only other court which to our knowledge has considered this question explicitly rejected the Secretary's construction of section 1395y(a)(1). Blacker v. Richardson, Civ.No. 2055, (D.Mont., Nov. 21, 1972), CCH Medicare & Medicaid Guide § 25, 613. *Id.*, 495 F.2d at 1282.

Nor is the Council's construction of § 1395y(a)(1) supported by the legislative history of the statute. See 1965 U.S. Code Cong. & Admin.News, p. 1989. The Court therefore concludes that the Secretary erred in denying payment on behalf of Miss Torphy for inpatient hospital services rendered her from May 11 through June 30, 1971.

There having been no other reason advanced for the denial of payment on behalf of Miss Torphy, now therefore,

It is ordered that plaintiff's motion for an order reversing the decision of the Secretary be and hereby is granted.

It is further ordered that the motion of the defendant for an order affirming the decision of the Secretary be and hereby is denied.

It is further ordered that judgment be entered for the plaintiff and against the defendant in the sum of $2,836.45.