774 F.2d 210
 11 Soc.Sec.Rep.Ser. 138, Medicare&Medicaid Gu 34,950
Eileen Burns LERUM, Executrix of the Estate of Hortense
Burns, Plaintiff- Appellant,
v.
Margaret M. HECKLER, Secretary of Health and Human Services,
Defendant- Appellee.
 No. 84-2765.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 6, 1985.
Decided Oct. 2, 1985.
 
 Norman J. Lerum, Chicago, Ill., for plaintiff-appellant.
 Mimi H. Leahy, Dept. of Health & Human Services, Chicago, Ill., for defendant-appellee.
 Before CUDAHY and COFFEY, Circuit Judges, and PELL, Senior Circuit Judge.
 PELL, Senior Circuit Judge.
 
 
 1
 Plaintiff, Eileen Lerum, sued defendant, Margaret Heckler, Secretary of Health and Human Services, for reimbursement of hospital care costs incurred by her mother (decedent). Plaintiff is the executrix for the estate of decedent. The sole question presented is whether Medicare covers costs for services rendered in an acute care facility when, despite the patient's need for continued reimbursable medical services, the attending physician and the hospital's utilization review committee both certified that a skilled nursing facility could provide the required services.
 
 THE FACTS
 
 2
 On August 22, 1981, decedent, then sixty-nine, suffered a stroke. She had several other physical disorders, for which she had been receiving treatment. The stroke required her hospitalization. Initially, decedent was unable to care for herself. Physical therapy began on September 2. On September 16, the hospital's social worker began to seek space for decedent in an area skilled nursing facility. For some time, plaintiff insisted that decedent enter a skilled nursing facility within the immediate vicinity of decedent's home, effectively limiting the options to two facilities, both of which had no openings. According to the social workers, the skilled nursing facility that decedent eventually entered first solicited a placement application for decedent on October 7, 1981.
 
 
 3
 Decedent's condition improved significantly. By September 21, her doctor set a provisional discharge date of approximately thirty days, later changed to October 31, and finally, on September 28, the doctor changed the discharge date to October 10, noting decedent's major improvement and potential to walk on her own. Although, the following day, decedent became upset with the prospect of discharge and the doctor noted that he may have to change the date, the doctor never did alter the date. When the hospital's utilization review committee met on October 7, it determined that decedent no longer required inpatient acute care. The committee notified decedent and her family of its conclusions, revealed that the conclusions would result in the termination of Medicare benefits after October 10, and informed them that decedent could remain in the hospital only at private expense. On October 16, Blue Cross, the Secretary's fiscal intermediary, agreed with the committee's assessment, and stated that the care required for plaintiff was not of a type that necessitated inpatient hospital services. Agreeing to bear the expense, the family indicated that it wished to keep decedent in the hospital. After October 7, decedent continued to receive medication, tests, treatment, therapy, and the care of the hospital's doctors and nurses. By early November, decedent could stand, move her joints, and walk short distances with a four-pronged cane. On November 3, decedent left the hospital and entered a skilled nursing facility. In the spring of 1982, decedent left the hospital and returned home. Shortly thereafter, she died.
 
 
 4
 Medicare covered the costs incurred by decedent from August 22 through October 10 and also covered the cost of care at the skilled nursing facility after November 3. At issue is the cost of the services received from October 11 to November 3, which amounted to $2,952.19. Plaintiff sought administrative review of the fiscal intermediary's conclusions, whereupon the supervisor of the reconsideration section determined that a skilled nursing facility could have provided the care that decedent received from the hospital and determined that skilled nursing facility beds had been available in the area. Subsequent appeals to an administrative law judge and the Appeals Council failed to grant plaintiff the requested relief.
 
 
 5
 Plaintiff then sued defendant in federal district court. The magistrate to whom the court initially referred the matter recommended reversal of the Secretary's determination. The magistrate reasoned that because neither party disputed that the care decedent received was reasonable and necessary for treatment of her condition, that a hospital and not a skilled nursing facility provided the care was immaterial. The level of care, not the facility providing that care, was determinative. The magistrate emphasized the remedial nature of the Medicare legislation in reaching a concededly liberal construction of the section.
 
 
 6
 The Secretary objected to the magistrate's disposition. The district court sustained the objection. The court noted that the very purpose behind the establishment of utilization review committees was to evaluate whether a medical necessity existed for treatment in a hospital. Because hospitalization was not necessary to provide the services required by the decedent, the district court concluded that it was not reasonable and necessary to continue the hospital stay. Thus, Medicare did not cover the disputed expenses.
 
 
 7
 The Medicare program consists of a great number of statutory and administrative regulations. Nonetheless, only a few of these pronouncements are relevant to the instant case. The first such provision states that Medicare will pay for expenses which are "reasonable and necessary for the diagnosis and treatment of illness." 42 U.S.C. Sec. 1395y(a)(1)(A). There is no further definition of what is reasonable and necessary for treatment. To receive Government payment for hospital services, a physician must certify that the services received "[were] required to be given on an inpatient basis for such individual's medical treatment." 42 U.S.C. Sec. 1395f(a)(3). A further prerequisite is that, "with respect to inpatient hospital services ..., a finding [was] not ... made ... pursuant to the system of utilization review that further hospital services ... [were] not medically necessary." 42 U.S.C. Sec. 1395f(a)(7). A separate statutory provision governs the establishment and procedural requirements of a hospital's utilization review committee. 42 U.S.C. Sec. 1395x(k). See Kraemer v. Heckler, 737 F.2d 214 (2d Cir.1984), for an extended analysis of the operation of utilization review committees. Finally, one of the requirements for acting as a fiscal intermediary for Medicare is that the intermediary be "willing and able to assist the providers to which payments are made through it under this part in the application of safeguards against unnecessary utilization of services furnished by them to individuals entitled to hospital insurance benefits." 42 U.S.C. Sec. 1395h(b)(1)(B).
 
 DISCUSSION
 
 8
 The instant case presents an issue heretofore unaddressed. In fact, very few cases have addressed the meaning of the "reasonable and necessary" provision of the Medicare Act. Nonetheless, two cases provide a framework for the analysis of the present issue. In Hultzman v. Weinberger, 495 F.2d 1276 (3d Cir.1974), the Secretary denied coverage for services rendered because, in his view, a lesser care facility could have rendered the same services. The treating physician had certified that the patient needed inpatient hospital care under 42 U.S.C. Sec. 1395f(a)(3) because, although the primary purpose of the treatment was therapy, a number of other ailments complicated her treatment. The hospital's utilization review committee also had certified the medical necessity of inpatient services. Although the Secretary conceded that the patient's services were reasonable and necessary for her treatment, he agreed with the Hearing Examiner, however, that her care did not require hospitalization.
 
 
 9
 The court reversed the Secretary's denial of benefits. Although acknowledging the aim of Congress to encourage the efficient and economical use of medical services, the court relied upon the legislative history that indicated Congress' intent to delegate to each hospital's utilization review committee the primary role in securing those objectives. Id. at 1280. See 1965 U.S.CODE CONG. & AD.NEWS at 1943, 1987. The court stated that the Secretary's
 
 
 10
 construction of section 1395y(a)(1) ... cannot be sustained in the face of the clear and plain language of that section. Section 1395y(a)(1) excludes from coverage only those services which are not reasonable and necessary to the treatment or diagnosis of a patient's ailments. It does not speak at all to the question of whether it is medically necessary to provide such services on an inpatient or outpatient basis or in a hospital rather than extended care facility.
 
 
 11
 495 F.2d at 1282. Thus, the court deferred to the determination of the utilization review committee that it was medically necessary for the patient to receive treatment in the hospital.
 
 
 12
 In the second case, Monmouth Medical Center v. Harris, 646 F.2d 74 (3d Cir.1981), the court upheld the Secretary's decision to deny reimbursement for that portion of a hospital stay beyond which the patients needed no acute level care or skilled nursing care. The hospital was unable to place the patients in nursing homes because of a shortage of hospital beds. Nursing home care expenses are not covered by Medicare. 42 U.S.C. Sec. 1395y(a)(9) (custodial care exclusion). In dictum, the court cited Hultzman for the following proposition: "Skilled care is reimbursable under Medicare, even when it must be administered in an acute care facility because of a lack of available skilled nursing beds." 646 F.2d at 78. The regulations so provide. 42 C.F.R. Sec. 405.1627(b) (1984).
 
 
 13
 In Monmouth, the hospital's utilization review committee had determined that no further medical necessity existed for the patients to receive the hospital's acute level services. Nevertheless, the committee concluded that the patients' continued stay was "justified." Because of the unavailability of custodial nursing home facilities, the only remaining alternative to the hospital's care was no care at all. The Secretary denied coverage because the level of care actually received by the patients was not reimbursable, as the committee had recognized. The Secretary rejected, however, the committee's assertion that a nursing home bed shortage justified continued inpatient care. The court upheld the Secretary's position. The court looked behind the committee's assertion that the bed shortage justified continued hospitalization, stating: "the level of care given to patients is determinative of coverage, rather than the place in which the care is administered." 646 F.2d at 80.
 
 
 14
 The present case falls somewhere between Monmouth and Hultzman. Medicare would have covered the care that decedent received at the hospital after October 10 had she been in a skilled nursing facility. Plaintiff claims that there were no beds available in which to place decedent, thus falling within 42 C.F.R. Sec. 405.1627(b). The statute provides: "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. Secs. 405(g). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison v. N.L.R.B., 305 U.S. 197, 209, 59 S.Ct. 206, 83 L.Ed. 126 (1938). Accord Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (applying Consolidated Edison definition to social security case).
 
 
 15
 Decedent's family insisted that decedent enter one of the two skilled nursing facilities of her hometown. The record shows that there were no beds available in either of the two facilities in October 1981. As the record also indicates, however, the facility that decedent finally entered solicited an application from her family as early as October 7. Consequently, we agree with the district court's conclusion that "[p]laintiff has not offered any evidence to show that no skilled nursing bed was available at the time Mrs. Burns' coverage ceased." The only thing that prevented decedent's earlier placement in a skilled nursing facility was her family's insistence that she go to one of the two facilities in the immediate vicinity.
 
 
 16
 As a result, plaintiff has failed to establish eligibility for relief under 42 C.F.R. Sec. 405.1627(b). Having failed to do so, the rest of plaintiff's argument is obviously without merit. Plaintiff contends that Medicare should pay for covered services regardless of where a patient receives those services. If that were so, patients would have tremendous incentives to remain in hospitals regardless of the ease with which a skilled nursing facility could provide the same services. If the costs to patients were the same, most would undoubtedly prefer to remain in a hospital than to transfer to a skilled care facility because of the higher care capabilities available in the hospital, even if unneeded by the patient. Such incentives would result in tremendous inefficiencies in the allocation of medical care. See Weir v. Richardson, 343 F.Supp. 353, 357 (S.D.Iowa 1972). Yet, one of the main purposes of the Medicare program is to ensure fiscal responsibility and eliminate the overutilization of hospital services. 1965 U.S.CODE CONG. & AD.NEWS at 1971-72, 1987. See Monmouth Medical Center v. Harris, 646 F.2d at 76.
 
 
 17
 Plaintiff is correct that a goal of the Medicare program is to provide health services to the aged. See, e.g., Hultzman v. Weinberger, 495 F.2d at 1281. Allowing this goal to supplant all concerns with allocation efficiencies, however, might well result in the overutilization of acute care facilities. To reconcile the dual goals of providing health care and encouraging efficiency in the allocation of health care resources, Congress established the utilization review committee system. The committee in the present case found that decedent had no continuing medical necessity for acute care services. The Secretary agreed with the committee's conclusion, which we find to be supported by substantial evidence.
 
 
 18
 Both hospitals and skilled nursing facilities provide covered services. Yet, the cited statutes and regulations clearly demonstrate that Congress recognized a substantive difference in the level of services provided by these different institutions. See especially 42 U.S.C. Secs. 1395f(a)(3), 1395f(a)(7). Plaintiff's contention that there are only covered services and uncovered services ignores these statutory provisions. The legislative framework establishes two levels of covered services--acute level covered services and non-acute level covered services. Congress left to the utilization review committees the primary function of determining into which of these two levels certain services fall. The committee in this case determined that the services received by decedent were not acute level covered services. The Secretary adopted the committee's view, and that position is supported by substantial evidence.
 
 CONCLUSION
 
 19
 We have considered all the arguments raised by appellant and find them to be without merit. Accordingly, the decision of the district court is AFFIRMED.