John D. HASH, Plaintiff,

v.

Elliott L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 70-C-56-A.

United States District Court, W. D. Virginia, Abingdon Division.

Jan. 28, 1971.

Frederick W. Adkins, Cline & McAfee, Norton, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

This action is brought pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to set aside the defendant's denial of disability insurance benefits. The plaintiff filed an application for benefits on November 9, 1965 and he alleged that his disability dated from October 23, 1965. This claim was denied initially and on reconsideration. A second application was filed on March 14, 1968 alleging disability beginning in 1965 and this claim was denied at all levels of the administrative process with the Appeals Council's denial becoming the final decision of the Secretary on March 20, 1970.

The claimant was born in 1919 in Indian Creek, Virginia. In addition to achieving the equivalent of a high school education, he has studied drafting at the Baltimore Institute of Engineers and has completed courses in aircraft mechanics and hydraulics. He served in the artillery from 1937–1940 and in the Air Force from 1941–1951. He was forced to retire by the Air Force because of "hypertension, vascular disease, and A–V block of the heart" and he was

awarded a 30% service disability pension. In 1967 this was increased to a 100% disability pension, which amounts to $425 per month.

Hash has been involved in a number of different jobs since leaving the service. He has worked as a security guard, a lumber jack, an employee in a plywood mill, a field checker for a construction company, and an inspector for the Maryland State Road Commission. He stated that he quit this last job because even routine office work became very irritating to him, which caused him to speak shortly to people and thus lose many of his friends. Subsequently he again took employment as a cab driver and did fine for a while but in 1965 he was hospitalized seven times, five of which were for hypertension. He has not worked since he last drove a cab in 1967.

Claimant now lives with his wife in a trailer on property belonging to his sister. He testified that he drives to the grocery store and to a lake about twelve miles from his home where he goes fishing. Mr. Hash does some work in his garden and mows his lawn on a riding mower but he also stated that he takes a nap every day from 1:00 p. m. to 2:30 or 3:00 p. m. The hearing examiner noted that Hash had a deep sun tan. Claimant further testified that he could work slowly for an hour without ill effects but that if he worked longer than this or became subject to any pressures, he would be unable to do any work the next day.

The medical evidence in the record is extensive. Earliest in origin is a report concerning claimant's hospitalization in the United States Public Service Hospital in Baltimore, Maryland during parts of 1965 and 1966. Diagnoses of diabetes mellitus, hypertensive cardiovascular disease, and essential hypertension were reported and it was determined that claimant was "not fit for duty permanently."

On August 16 and September 2, 1966 Nash was examined by Dr. Ralph Webber, an internist. Dr. Weber's report comprised over eight pages and stated the following diagnoses: (1) raised blood pressure of uncertain etiology; (2) suspected ischemic cardiac disease, class 11 B; (3) exogenous obesity; and (4) history of hyperglycemia. His general conclusion as to the effect of these ailments on the patient's work ability was stated:

The frequency of the chest discomfort and the patient's exercise tolerance as indicated by his history, would certainly seem to categorize his clinical state as of no greater severity than a Class 11 B and there would appear to be no medical contraindication to his return to previous levels of work activity.

In his September 2 report, Dr. Weber had the claimant undergo a Double Master's Test and an electrocardiographic test.

He concluded:

None of the criteria ordinarily interpreted as 'evidence of coronary insufficiency' were apparent on the enclosed series of tracings.

The record also contains reports of some of Hash's subsequent visits to the Public Health Service Hospital which add little to the other evidence. The claimant underwent another thorough physical from Dr. Phillip S. Smith, an internist, on May 20, 1968. His findings were summarized:

Our diagnosis is Coronary insufficiency; 2. Arterial hypertension, marked; 3. First degree AV block and left axis deviation; 4. Chronic glomerulonephritis; 5. Pleural effusion, left, slight; 6. Spontaneous hyperglycemia; 7. Diabetes mellitus, lowgrade. Function classification Class 11; therapeutic classification Class B.

It should be noted that although Dr. Smith did not state in layman's terms an opinion on Hash's ability to work, he did place the claimant in the same functional classification as indicated by Dr. Weber, who considered Hash able to do his former work.

In December, 1968 Hash was again readmitted to the Public Health Service

Hospital in Baltimore. An abdominal aortogram was performed which revealed "the presence of an almost complete occlusion of the right renal artery extending about 15mm from the takeoff of the left renal artery." The attending physicians made the following diagnoses: (1) Bilateral occlusion of the right and left renal arteries, unchanged; (2) Diabetes mellitus, adult onset, six years duration, unchanged; (3) Hypertension, etiology unknown, suspect secondary to #1; (4) Duodenal ulcer disease with active ulcer of the duodenum; (5) Prostatic hypertrophy with the bladder neck obstruction; and (6) Hypoplasia of the right kidney suspected secondary to renal artery stenosis. It was again noted that the patient was not fit for duty.

Corrective surgery was contemplated and in a response to an inquiry of the claimant, Dr. Robert W. McCurdy, a medical officer for the Public Health Service Hospital, stated on March 17, 1969:

> My answer to your question if it would be harmful to delay the surgery would be an unequivocal yes. Your blood pressure is high enough to produce severe damage to your body, and the longer we wait the chances of an operation helping you also diminish.

Apparently this operation was not performed, however, because the claimant was again treated at the Public Health Service Hospital from April 24 to May 2, 1969 and no mention of the operation is contained in the reports. Dr. William Prescott stated in his Medical Report of Duty Status dated May 2, 1969: "Patient permanently not fit for duty. Unable to do any work." A report dated May 5, 1969 to the claimant's attorney stated diagnoses of essential hypertension, severe; arteriosclerotic heart disease; peripheral vascular disease, severe; renal artery partial occlusion, bilateral; status post duodenal ulcer; status post resection of esophageal leiomyoma; diabetes mellitus, controlled; and chronic obstructive pulmonary disease.

On the basis of this evidence the hearing examiner found that the claimant was not disabled within the meaning of the Social Security Act. Apparently the Appeals Council felt that a recent report from a doctor not associated with the Public Health Service Hospital would be helpful. Therefore the claimant was sent to Dr. Charles J. Harkrader, Jr. of Bristol, Tennessee. Since Dr. Harkrader's report is the most recent medical evidence in the record, his conclusions will be stated in full:

> I believe that Mr. Hash is suffering from Buerger's disease. So far as his peripheral vascular status is concerned, I believe that he is capable of doing light work.
>
> Despite his long history of vascular disease, Mr. Hash has never stopped smoking, the one thing which would be most likely to improve his condition. I believe that his condition might stabilize and possibly improve if he would stop smoking and follow other simple medical measures, such as Buerger's exercises.

With this report in hand, the Appeals Council also denied a period of disability.

Although the only question involved in this controversy is whether the denial of benefits is supported by substantial evidence, 42 U.S.C. § 405(g), the court admits that the case is not without some difficulty. One thought which arises is the question whether the Secretary has given adequate relative weight to the various elements of evidence.

██ Hash testified that he was able to work a short period each day at a slow pace but that greater or more strenuous activity made him unable to work the next day. On the one hand, the Secretary may not disregard the claimant's own testimony and his subjective complaints, as this court has previously noted in Grizzle v. Cohen, 297 F.Supp. 790, 797 (W.D.Va.1969). On the other hand, the disabling impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory di-

agnostic techniques." 42 U.S.C. § 423(d) (3). Sometimes a fine line must be drawn. In this particular case there is no question but that Hash does suffer from a number of ailments but the issue of whether these ills are disabling is disputed. In that Mr. Hash's testimony apparently referred to the effects on him of physical labor such as hoeing the garden or mowing the lawn, the court believes that the Secretary did not necessarily disregard his testimony. The fact that the plaintiff may be unable to do extensive yard work does not mean that he could not do work similar to his job as an inspector for the Highway Commission. By his own testimony Hash explained that he left this job because the work irritated him and caused him to speak shortly to others. This fact would not amount to disability.

Apparently the opinion of the physicians for the U.S. Public Health Service Hospital has been unanimous in finding that the plaintiff is unfit for duty. The question of whether an individual is unfit for duty in the service, however, does not mean that he is disabled within the meaning of the Social Security Act. While the findings of other agencies are entitled to weight in the Secretary's deliberations, they are not binding upon him. Darter v. Cohen, 299 F.Supp. 473 (W.D.Va.1969). The fact is that the three independent physicians who conducted examinations of the claimant found him still capable of undertaking light work. Furthermore, there is evidence in the record that plaintiff's condition might be improved if he would undergo corrective surgery, give up smoking, and do certain simple exercises.

Considering the claimant's educational background and work abilities, his ability to get around and to work outdoors, and the reports of the three independent physicians, the court is of the opinion that the Secretary's finding that the plaintiff is not precluded from his previous work as an inspector is sup-

ported by substantial evidence. Consequently, the defendant's motion for summary judgment must be and hereby is granted.