John S. TROTSKY

v.

Elliott L. RICHARDSON, Secretary of
Health, Education and Welfare.

Civ. A. No. 70–1414.

United States District Court,
E. D. Pennsylvania.

March 10, 1971.

Joseph A. Zane, Schuylkill Haven, Pa., for plaintiff.

L. C. Bechtle, U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

TROUTMAN, District Judge.

This action is brought under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. The final decision in this case is that of the Appeals Council dated April 2, 1970, denying the plaintiff's request for the review of a decision rendered by the hearing examiner on December 23, 1969, in which the examiner denied the plaintiff benefits under Section 216(i) and Section 223, respectively, of the Social Security Act.

The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). This Court has no authority to hear the case *de novo*. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964); Mauldin v. Celebrezze, 260 F. Supp. 287 (D.C.S.C.1966). The question here involved, therefore, is whether there is substantial evidence to support the Secretary's decision. To answer this question, it is the duty of this Court to look at the record as a whole. Boyd v. Folsom, 257 F.2d 778 (3rd Cir. 1958); Klimaszewski v. Flemming, 176 F.Supp. 927 (E.D.Pa.1959).

The test for disability consists principally of two parts: (1) a determination of the extent of the physical or mental impairment and (2) a determination whether that impairment results in an inability to engage in substantial gainful activity. Stancavage v. Cele-

brezze, 323 F.2d 373 (3rd Cir. 1963); Klimaszewski v. Flemming, supra, 176 F.Supp. at page 931.

"Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion". Consolo v. Federal Maritime Commission, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L. Ed.2d 131 (1966); Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). It must be enough, if the trial were to a jury, to justify a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. If there is only a slight preponderance of the evidence on one side or the other, the Secretary's finding should be affirmed. Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

There are four elements of proof to be considered in making a finding as to plaintiff's ability or inability to engage in any substantial gainful activity. They are: (1) medical data and findings, (2) expert medical opinions, (3) subjective complaints, and (4) plaintiff's age, educational background, and work history. Dillon v. Celebrezze, 345 F.2d 753, 755, (4th Cir. 1965); Thomas v. Celebrezze, supra, 331 F.2d, at 545; Underwood v. Ribicoff, *supra*, 298 F.2d, at 851.

We proceed to a consideration of the evidence in this case in the light of these elements of proof.

Plaintiff, approximately fifty-two years of age, alleges that he became totally disabled on September 22, 1968. (P. 26) Except for automative training in a "service school" following World War II, his formal education terminated at the eighth-grade level. (P. 26) He has never worked as a mechanic. (P. 27) Upon completion of his education in 1936, he went into the mines where he was employed until 1966. (P. 29) Commencing as early as 1964, he suffered shortness of breath, apparently resulting from anthracosilicosis. (P. 36) The condition

progressed until about December 1967, when it was determined that he was suffering from an early third-stage anthracosilicosis with moderate emphysema. (P. 38) In the meantime, he voluntarily ceased his employment in the mine on the advice of his physician. (P. 42) He then performed the duties of a carpenter's helper from 1966 until September 1968, when he left of his own volition. (P. 31) He explained, as follows, the basis for leaving his job as a carpenter's helper:

"Q. What did you do on a firing range?

A. Pound fencing, fixing targets, carpentry work.

Q. That was your last job?

A. Yes, that was my last job. Walking up in a tower there, a man 75 years old, he could make it up without stopping. I had to make three or four stops but I knew something was wrong with me.

Q. You found it necessary to leave voluntarily? You were not fired?

A. No, I was not fired.

Q. Why did you stop?

A. I was getting short of wind and my breath—chest." (Page 30)

His attending physician, Dr. DiNicola, explained, as follows, the basis for his conclusion that the plaintiff is totally disabled notwithstanding the fact that he does not substantially disagree with the contrary findings of Drs. Moll and Corazza (p. 41):

"Q. With reference to the findings of Dr. Francis K. Moll, M-o-l-l, and Dr. Corazzo, is there anything in any of these reports with which you disagree?

A. That I disagree?

Q. Yes.

A. Well, the one thing that I did notice was the fact that in the history the physical as taken by both of these individuals, as taken by both of these individuals,

they cannot know intimately the personality of the individual as someone who has taken care of that patient for many years as to his desirability of working, as to whether the individual has initiative to go to work and what will force him to quit working. In this individual, of his own volition, he has come to the conclusion that he can no longer work because of his shortness of breath and for a man like this to do this there has to be a significant embarrassment on his pulmonary physiology to come to this conclusion particularly since of his age and his eye. He is only forty-nine.

CLAIMANT: Fifty.

DR. DiNICOLA: Fifty years old. So, coupled with the intermittent knowledge of his disease as it has progressed and the fact that he feels that he can no longer work in cooperation with his chest X-ray and his pulmonary function, I told the man that he was disabled on the basis of his disease entity."

Notwithstanding, the plaintiff's sincerity and his obviously honest belief that he is totally disabled and notwithstanding Dr. DiNicola's complete confidence in the plaintiff's good faith, the fact remains that the objective findings of Dr. DiNicola do not support a finding of total disability as of September 22, 1968, (pp. 38, 39):

"Q. You have reviewed Dr. Corazza's report? Incidentally, have you performed any pulmonary function studies or other tests yourself?

A. I did perform a exercise tolerance but I must apologize. I can only give recall that he did have some minor degree, in my opinion, of stress. Although the record that I had showing this which was performed in and about December 26, 1967 showed

some restriction of his activity although unfortunately, I have misplaced that part. I have all his records and I was unable to find that part because I had moved my office. That's just from memory. The other pulmonary function studies are sent to the pulmonary function laboratory of the Pottsville Hospital. This was performed August fourth, 1969."

Neither do the findings at the Pottsville Hospital support a finding of total disability as of September 22, 1968 (pp. 39, 40):

"Q. Incidentally, before we do that, I would like to receive in evidence the Pottsville Hospital pulmonary function studies performed August 4, 1969, as exhibit number 22.

A. His forced vital capacity is 72% of predicted. His forced expiratory volume was 56% of predicted. His forced expiratory flow—

Q. About how much was that?

A. 56%. Forced expiratory flow was 37%. His maximum voluntary ventilation, doctor says, was 67%.

Q. Does this correspond to the maximum breathing capacity?

A. Some of the initials have changed, so, if you will allow me, I will read on the back.

Q. All right.

A. Just as correction.

Q. And, how much is that?

A. 67% of the predicted. As I said, the initials have changed since I took my pulmonary physiology.

Q. All right, sir.

A. And the F.E.V., which is interpreted as the amount of air which can be expired in certain amount of seconds, was 70% of predicted volume. Interpretation of these values were that they were all diminished and he had some outflow resistance and

in light of his chest X-rays and his clinical history and his physical examination, I interpreted these studies to tell me that he had probably third-stage silicosis complicated by moderate pulmonary emphysema particularly—"

We shall not review in detail the findings of Dr. Francis K. Moll, who examined plaintiff on March 20, 1969, (pp. 71–74) and the findings of Dr. Leo J. Corazzo who examined plaintiff on June 10, 1969. (PP. 86–88) Suffice it to say that they support the findings and conclusions of the examiner. (PP. 12, 13)

Viewing the record as a whole, it contains substantial evidence to support the examiner's conclusions as affirmed by the Appeals Council. On the entire record, we conclude that the denial of disability benefits was proper.

Therefore, the plaintiff's motion for summary judgment will be denied and the Secretary's motion for summary judgment will be granted.