**Henrietta WEIR, Plaintiff,**

v.

**Elliot Lee RICHARDSON, Secretary of Health, Education and Welfare of the United States of America, Defendant.**

**Civ. No. 11–326–C–2.**

United States District Court,
S. D. Iowa, C. D.

June 6, 1972.

Marvin E. Duckworth, Des Moines, Iowa, for plaintiff.

Allen L. Donielson, U. S. Atty., and John B. Grier, Asst. U. S. Atty., Des Moines, Iowa, for defendant.

## MEMORANDUM AND ORDER

HANSON, Chief Judge.

The Court has before it defendant's Motion for Summary Judgment filed on January 17, 1972, and plaintiff's Motion for Summary Judgment filed on May 5, 1972. This is a proceeding to review the administrative decision of the Secretary of Health, Education and Welfare of the United States, brought under 42 U.S.C., Sections 405(g) & 1395ff(b) and the Court concludes that it has jurisdiction over the subject matter thereof. Plaintiff complains to this Court of a decision adverse to her by the Secretary with respect to a claim for extended care benefits. Section 405(g) provides "where a claim has been denied by the Secretary . . . because of failure of the claimant . . . to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations." Section 405(g) contemplates review by the Court solely upon the pleadings and transcript before the Secretary. No new evidence may be admitted before this Court in such a proceeding. 42 U.S.C., Section 405(h). With respect to the use of summary judgment in a proceeding under Section 405(g), this Court in Throgmartin v. Richardson, Civil No. 10–240–C–2 (S.D.Iowa, Feb. 28, 1972) (unreported), concluded: "Such a procedure [under 42 U.S.C., Section 405(g)] does not admit the use of summary judgment, since [summary judgment] procedure allows new factual evidence to be admitted in the form of affidavits.

. . . . McMullen v. Celebrezze, 335 F. 2d 811 (9th Cir. 1964), cert. denied, 382 U.S. 854 [86 S.Ct. 106, 15 L.Ed.2d 92]; Ayala v. Secretary of Health, Education and Welfare, 51 F.R.D. 505 (D.P.R. 1971)." Accordingly, the Court will deny the Motions for Summary Judgment and proceed to the merits of the case.

Plaintiff, Henrietta Weir, of Des Moines, Iowa, an octigenarian, was hospitalized at Iowa Methodist Hospital, Des Moines, from October 31, 1969 to November 17, 1969, primarily for treatment of epigastric distress and also because of mental confusion. On November 25, 1969, eight days after her discharge from the hospital, she was admitted to the Americana Nursing Center, Des Moines, where she remained as a patient until January 7, 1970. Shortly thereafter she filed for benefits under Section 1812(a) (2) of the Social Security Act (42 U.S.C., Section 1395d(a) (2)), which provides for payment for post-hospital extended care services under certain conditions. The Bureau of Health Insurance, Social Security Administration, denied Mrs. Weir's claim with respect to the confinement at Americana Nursing Center. Mrs. Weir filed a request for hearing, and on March 9, 1971, the Hearing Examiner rendered a decision granting her claim. The Appeals Council reviewed the Examiner's decision on its own motion, and on July 1, 1971, filed its decision reversing the Examiner and denying Mrs. Weir's claim. The decision of the Appeals Board became the final decision of the Secretary.

Mrs. Weir was, at the time of her confinement, qualified for hospital insurance benefits for the aged under the Social Security Act. 42 U.S.C., Section 1395c. The Social Security Act provides for payment to qualified persons such as Mrs. Weir for "post-hospital extended care services for up to 100 days during any spell of illness." 42 U.S.C., Section 1395d(a) (2). The Act provides that payment for services to an individual

may be made to providers of services but only if:

"a physician certifies . . . that . . . in the case of post-hospital extended care services, such services are or were required to be given on an inpatient basis because the individual needs or needed skilled nursing care on a continuing basis for any of the conditions with respect to which he was receiving inpatient hospital services . . . prior to transfer to the extended care facility. . . ." 42 U.S.C., Section 1395f(a) (2) (C).

The Americana Nursing Center is a qualified extended care facility under the Social Security Act. 42 U.S.C., Section 1395x(j). "Extended care services" include nursing care provided by or under the supervision of a registered professional nurse; physical, occupational, or speech therapy provided by the extended care facility; medical social services; and, such drugs, biologicals, supplies, appliances, and equipment as are ordinarily furnished by the facility. 42 U.S.C., Section 1395x(h). Section 1862(a) of the Act (42 U.S.C., Section 1395y(a)) provides *inter alia:*

Notwithstanding any other provision of this title, no payment may be made under part A or part B for any expenses incurred for items or services . . . (9) where such expenses are for custodial care.

The Secretary found that Mrs. Weir's expenses with respect to her confinement in the Americana Nursing Center were for custodial care, and thus denied her claim on the basis of Section 1862(a) (9) of the Act. Thus, the issue before this Court is whether there is substantial evidence to support the decision of the Secretary that payment may not be made on behalf of plaintiff for the services rendered to her during her stay from November 25, 1969 to January 7, 1970 at the Americana Nursing Center for reason that the services required and received were "custodial" in nature and, therefore, specifically excluded from coverage under Section 1862(a)

(9) of the Social Security Act, as amended, 42 U.S.C., Section 1395y(a) (9).

Section 405(g) of Title 42 of the United States Code provides: "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." The finality accorded the Secretary's findings extends not only to the evidentiary or basic facts, but also to ultimate facts drawn therefrom as inference or conclusion. Martlew v. Celebrezze, 320 F.2d 887, 889 (5th Cir. 1963); Ferenz v. Folson, 237 F.2d 46, 49 (3d Cir. 1956) cert. denied, 352 U.S. 1006, 77 S.Ct. 569, 1 L.Ed.2d 551 (1957); Livingstone v. Folsom, 234 F.2d 75, 77 (3d Cir. 1956); United States v. La Lone, 152 F.2d 43, 44 (9th Cir. 1945); Social Security Bd. v. Warren, 142 F.2d 974, 976 (8th Cir. 1944); Walker v. Altmeyer, 137 F.2d 531, 533 (2d Cir. 1943). *See also* 4 K. Davis, Administrative Law Treatise, Section 29.05 and cases cited therein. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. of New York v. N. L. R. B., 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). In order to be "substantial evidence," the evidence in support of an administrative determination "must do more than create a suspicion of the fact to be established." N. L. R. B. v. Columbian Enameling and Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939).

After carefully reviewing the pleadings and the record before the Secretary, the Court concludes that there is sufficient relevant evidence in the record for a reasonable mind to accept the conclusions of the Secretary. The primary purpose of Mrs. Weir's admission to Iowa Methodist Hospital was to treat her gastrointestinal problems. (Tr. 22 & 23). The certifying doctor's report at discharge indicated that she was also admitted to the hospital because of mental confusion (Tr. 22), but

his report made at the time of her admission speaks of only the gastrointestinal problems. (Tr. 23). She was discharged with certain medications to be administered at home. She remained home for 8 days before she was admitted to the nursing center. The physician's goals for the extended confinement, as shown by nursing center records (Tr. 28–32), were to relieve gastric distress, and to control mental confusion, diabetes and a cardiac condition. Her medications remained the same as those she was taking at home; the physician's only other orders were for daily diabetic testing and elevation of the head of the bed, both of which could be done by an ordinary person at Mrs. Weir's home. The certifying doctor's hospital discharge report shows that the cardiac condition, the diabetes, and the mental confusion were under medical control to the extent possible prior to Mrs. Weir's admission to the hospital, and that nothing changed with respect to these problems while she was in the hospital. (Tr. 22). The gastrointestinal problem was brought under medical control to the extent possible while Mrs. Weir was in the hospital; the medication prescribed for the problem when she went home and through her stay and release at the nursing center was such that an ordinary lay person could safely administer it. The mental confusion was the result of cerebral arteriosclerosis and was irreversible. There is no substantial evidence in the record indicating that the mental confusion was a problem requiring skilled nursing care; the contrary is indicated by the facts that Mrs. Weir was allowed home for 8 days between her stays at the hospital and the nursing center, on four occasions while she was in the nursing center, and for some period of time after her release from the nursing center. The reasonable inference from the record is that Mrs. Weir's daughter was taking care of her mother and that the daughter was finding Mrs. Weir troublesome to care for, for reasons not wholly apparent on the face of the record. The nursing charts from the nursing home show that the staff provided no services for Mrs. Weir that could not have been provided by an ordinary lay person. The chart indicates no medical problems arising during Mrs. Weir's stay; the notes are primarily concerned with the patient's confusion and restlessness. (Tr. 28–32). The Utilization Review Committee of the Americana Nursing Center, on December 4, 1969, concluded that extended care services were not necessary for Mrs. Weir (Tr. 38); she nevertheless remained in the facility until January 7, 1970. From all reports filed at the time of Mrs. Weir's stay at the nursing center, a reasonable man must conclude that Mrs. Weir did not need skilled nursing services and that her care at the facility was "custodial" within the meaning of Section 1862(a) (9) of the Social Security Act (42 U.S. C. § 1395y(a) (9)).

One year after Mrs. Weir's confinement, the certifying physician wrote that Mrs. Weir was sent to the nursing center because he thought it might be necessary to change the dosage of two of the heart medications, and that skilled nursing supervision was needed for this. Both medications had been given Mrs. Weir for some period of time prior to her admission to the hospital while she was at home. She was on the same dosages when she was sent home from both the hospital and the nursing center. There is nothing in the nursing center's records indicating that nursing personnel were ordered to pay or were actually paying any special attention to the effects of the heart medication (Tr. 28–32).

Plaintiff brings to the Court's attention its ruling in Tucker v. Celebrezze, 220 F.Supp. 209 (N.D.Iowa, 1963) wherein (at 211) it stated that "the Appeals Council's findings are given less weight in a case where they reject the Hearing Examiner's findings than in a case where they sustain the Hearing Examiner's findings." The Court directs the plaintiff's attention to the language following that quotation,

wherein the Court stressed the importance of the Hearing Examiner's findings in a situation in which the finder of fact must judge the credibility of witnesses. In the instant case, there was no live testimony before the Hearing Examiner. Thus, in this case, there would be no compelling reason to hold that the Hearing Examiner's appraisal of the evidence should be afforded any special weight, for the Appeals Council examined precisely the same evidence, all documentary, that the Hearing Examiner did.

■ Plaintiff contends that the Secretary must give controlling weight to the certifying physician's statement that the patient requires skilled medical supervision. She cites Teeter v. Flemming, 270 F.2d 871, 874, 77 A.L.R.2d 636 (7th Cir. 1959), which states:

> "The expert opinion of Dr. Morris as to disability and inability to engage in any substantial, gainful employment, was admissible evidence for consideration by the referee and not, in itself, binding on him. But as it was not controverted by substantial evidence to the contrary, the referee's adverse decision on the ultimate fact was properly set aside."

Many other cases agree with this holding. *E. g.*, Sayers v. Gardner, 380 F.2d 940, 952–953 (6th Cir. 1967); Celebrezze v. Warren, 339 F.2d 833 (10th Cir. 1964); Miracle v. Celebrezze, 351 F.2d 361, 378 (6th Cir. 1965); Ross v. Gardner, 365 F.2d 554, 558–559 (6th Cir. 1966); Gaden v. Gardner, 263 F.Supp. 374, 376 (D.S.C.1967); Kelly v. Celebrezze, 220 F.Supp. 611, 615 (W.D.S.C. 1963); Hill v. Fleming, 169 F.Supp. 240, 245 (W.D.Pa.1958). At most, these cases hold that the expert opinion of a physician must be upheld by the Secretary absent substantial evidence before him controverting such opinion. Here, there was much substantial evidence to controvert the certifying physician's opinion. The Court further notes that all of the above-cited cases dealt with the provisions of the Social Security Act which allow disability benefits for qualifying individuals. The provisions of the Act before this Court deal with Medicare. The Court would have great reluctance in holding that the rule allowing great weight to an examining physician's opinion in disability cases should extend to Medicare cases. Obviously, the examining physician has much more of a personal interest in the outcome of Medicare cases; a rule giving great weight to his opinion in Medicare cases could well create the opportunity for substantial abuses in the program. This Court, therefore, holds that a certifying doctor's opinions with respect to the necessity of skilled medical care are not of controlling weight, but may properly be weighed against all other evidence before the Secretary. Townsend v. Secretary of Health, Education and Welfare, 325 F.Supp. 982, 986 (E.D.Ky.1971); Trotsky v. Richardson, 323 F.Supp. 1119, 1121–1122 (E.D.Pa.1971); Hash v. Richardson, 322 F.Supp. 267, 270 (W. D.Va.1971).

The Court does not minimize the unfortunate debilitating, cronic generalized arteriosclerotic state in which Mrs. Weir existed. Indeed, the plight of such senility and the burdens the physical degeneration indigenous to old age can place not only on aged sufferers themselves, but also on the families who care for them, are all too well known to be disputed. The Court is certain that it would find the Secretary in agreement. Nevertheless, the fact remains that the Social Security Act permits the Medicare program to pay for services only when they are rendered to meet the needs of a patient who is furnished health services which can *only* be provided by trained and skilled professional personnel. The Secretary was correct in concluding that the care Mrs. Weir received at the Americana Nursing Center was "custodial" within the meaning of Section 1862(a) (9) of the Social Security Act; benefits were properly denied.