**Andrew F. PRUCHNIEWSKI**

v.

**Caspar W. WEINBERGER, Secretary, Department of Health, Education & Welfare.**

**Civ. A. No. N–75–253.**

United States District Court, D. Maryland.

May 6, 1976.

Herbert J. Arnold and E. James Thompson, Jr., Baltimore, Md., for plaintiff.

Jervis S. Finney, U. S. Atty. for the District of Maryland, and Virginia S. Draper, Asst. U. S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

NORTHROP, Chief Judge.

Plaintiff has brought this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Secretary of Health, Education and Welfare establishing a closed period of disability for plaintiff.

On March 6, 1972, plaintiff filed an application for disability insurance benefits, alleging that he became unable to work on August 29, 1969, at age 45. (Tr. 74–77). A hearing was held by an administrative law judge on October 12, 1973, and it was found that plaintiff was under a disability beginning August 29, 1969, and ending in April, 1972. After the Appeals Council denied plaintiff's request for a review of the administrative law judge's decision, plaintiff filed a civil action in this Court seeking review of the decision of the Secretary.

Upon motion of the Secretary, this Court remanded the case for the purpose of permitting further administrative action by the Secretary. After receiving further medical and lay documentation, the Appeals Council issued a decision on January 10, 1975, holding that plaintiff was entitled to a closed period of disability benefits beginning March 26, 1970 and terminating on June 30, 1972 (the close of the second month following cessation of disability).

It is this decision which is presently at issue. Plaintiff and the defendant have filed cross motions for summary judgment based upon the administrative record.

## STATEMENT OF FACTS

Plaintiff was born on July 19, 1924. He completed high school. (Tr. 40, 93). He also had some training in aircraft mechanics while serving with the U.S. Army Air Force from 1943 to 1945. (Tr. 40). His significant work experience consisted of over six years of service in the Baltimore City Fire Department (Tr. 44), a few years as an order filler, bulk handler, and stock controller for a pharmaceutical concern (Id.), and about fourteen years in the Harbor Tunnel Police, where his last position as a sergeant required him to supervise an average of 21 employees. (Tr. 45, 96, 106). Plaintiff lives with his wife in a two-floor house. (Tr. 39). He is able to drive an automobile (Tr. 40), and he helps his wife with the household work. (Tr. 52).

Plaintiff alleges continuous inability to work since August 29, 1969, at age 45, because of an injury to his left knee. He dates the onset of his condition to a work-related injury he sustained in August, 1969. (Tr. 93).

In a letter dated September 9, 1970 (Tr. 127–28), Dr. Chris P. Tountas, orthopedic surgeon, indicated that he had treated plaintiff for his left knee problem, and that plaintiff had returned several times in April, 1970, complaining of recurrent left knee swelling. A decision was made to operate on plaintiff's left knee, but the surgery was cancelled because of the presence of leukocytosis (increase in the number of white blood cells). (Tr. 127).

Records from the Church Home and Hospital (Tr. 125) disclosed that plaintiff was admitted to that institution on May 10, 1970, primarily for evaluation of the leukocytosis. Final diagnosis was leukocytosis, probably due to infection; possible diverticulitis; and acute pyelonephritis. Plaintiff was discharged on May 17, 1970, ambulatory and improved.

Plaintiff was readmitted to Church Home and Hospital on July 25, 1970 (Tr. 126), and on July 27 he underwent an arthrotomy (surgical incision of a joint) for excision of the left medial meniscus (internal semilunar cartilage of the knee joint). He was discharged on August 4, 1970, with diagnoses of degenerative osteoarthritis of the left knee, and tear of the left medial meniscus. Plaintiff was seen by Dr. Tountas on August 14, 1970, and was referred to Church Home and Hospital for physical therapy. Dr. Tountas reported that as of September

4, 1970, plaintiff's left knee lacked 15% extension, but had 100% flexion. (Tr. 128).

Plaintiff was examined on March 30, 1971 (Tr. 147–48), by Dr. Edmond J. McDonnell, an orthopedic surgeon. After examination, including X-rays of plaintiff's left knee, Dr. McDonnell's diagnosis was "mild osteoarthritis of the left knee" and "restricted motion of the left knee." (Tr. 148).

In another report dated April 2, 1971 (Tr. 112–14), Dr. Tountas indicated he last saw plaintiff on February 26, 1971, and that plaintiff was experiencing swelling, limited motion, and pain and was walking with a limp. Dr. Tountas included a copy of a letter dated January 25, 1971 (Tr. 115), relating that as of January 22, 1971, plaintiff was able to bear weight without support, but needed a cane to negotiate stairs. Plaintiff was noted to have full extension of the left leg. In a letter to the State Accident Fund, dated July 30, 1971, Dr. Tountas asserted that plaintiff had a 30% permanent impairment of the left leg. (Tr. 129).

The record contains a series of reports from Dr. Eli M. Lippman, an orthopedic surgeon. On January 21, 1970 (Tr. 152), he saw plaintiff for complaints of pain and swelling in his left knee. On March 11, 1970 (Tr. 151), he again saw plaintiff. Examination disclosed that flexion to 80 degrees was painful, and disability of the left knee was calculated at 35% permanent. In a report dated October 11, 1971 (Tr. 149–50), Dr. Lippman indicated plaintiff's left knee lacked 3 degrees of extension and flexion was just short of 90 degrees. X-rays of the left knee showed osteoporotic changes in the bones. He concluded (Tr. 149) that the left knee disability was 60 to 65% permanent.

A report dated March 17, 1972, from William E. Tucker, Registered Physical Therapist, revealed that plaintiff had received a total of 107 physical therapy sessions involving the left lower extremity. These sessions terminated on October 31, 1971. (Tr. 130).

Plaintiff was examined on April 14, 1972 (Tr. 131), by Dr. Jesse N. Borden, orthopedic surgeon, at the request of the Maryland State Disability Determination Program. At that examination, plaintiff used a cane to walk and stated that his knee clicked and buckled when not using the cane. On examination the left knee revealed no effusion (escape of fluid into a part or tissue). Plaintiff was able to flex his knee to 90 degrees, and extension was normal. Abduction and adduction movements revealed no unusual laxity. Cruciates (tendons) were apparently intact, as was the leg circulation. Sensation was reported as normal. X-rays of the left knee disclosed the presence of arthritic changes in the joint with some joint space narrowing. Dr. Borden arrived at an impression of limitation of motion in the left knee secondary to injury and commented that plaintiff should not engage in activities requiring constant squatting, standing, or walking. He further commented that plaintiff could sit, stand, and change position, and probably could drive a vehicle. (Tr. 131).

On September 20, 1972, plaintiff was examined by Dr. Lawrence F. Honick, orthopedic surgeon. (Tr. 132–33). Plaintiff complained to Dr. Honick of intermittent pain over the medial aspect of the left knee and of difficulty in rising from a sitting position. He described weakness, buckling, and crackling of the knee. On physical examination plaintiff appeared well-developed and well-nourished. He was in no distress, and he had normal posture and gait. Examination of the knee revealed no atrophy, deformity, or acute inflammatory signs. There was tenderness over the anterior aspect of both knees. Plaintiff exhibited full range of motion, but had some weakness of the quadriceps muscles, more pronounced on the left. MacMurray's sign (occurrence of a cartilage click during manipulation of the knee) was negative bilaterally, and all ligaments were described as stable. Radiographic examination of both knees revealed a slight degenerative narrowing of the medial compartment of the left knee; the right knee was normal. Plaintiff stated during this examination that he could only walk about two blocks at

a time, that he had to rely on his cane, that he had difficulty going up and down steps, that he could sit for only about 30 minutes at a time because of knee stiffness, and that bending and stooping were difficult.

Dr. Honick's impression was that the plaintiff had a history of medial menisectomy of the left knee with subsequent moderate to mild arthritis. He recommended that plaintiff be seen by a physical therapist for instructions in quadriceps strengthening exercises. In a letter to S. R. Corbin of the Disability Determination Program (Tr. 133), Dr. Honick expressed the opinion that plaintiff did not have the residual functional capacity to engage in any type of occupation requiring prolonged weight-bearing at that time.

Plaintiff was seen by Dr. Jason H. Gaskel on September 27, 1972 (Tr. 136–37), for treatment of a perianal abscess. The abscess ·was drained.

The record contains a letter dated January 9, 1973 (Tr. 155), from the Maryland State Department of Education, Division of Vocational Rehabilitation, indicating that the agency was unable to find employment for plaintiff consistent with his disability which would pay enough to make it worthwhile to him.

In a letter to plaintiff's attorney, dated September 20, 1973 (Tr. 158–59), Dr. Albert Nahum, internist, recounted plaintiff's medical history up to August, 1970. He highlighted plaintiff's high white cell count prior to the scheduled knee operation. The report showed that Dr. Nahum saw plaintiff a few more times during May and June, 1970, and that on visits subsequent to May 19, 1970, plaintiff felt generally well except for pain in his knee. Dr. Nahum felt there was no association between the leukocytosis and plaintiff's symptoms of the left knee. (Tr. 159).

Dr. William W. Michaux, a vocational expert was present at plaintiff's hearing on July 12, 1973. He reviewed all of the exhibits and heard the testimony. Responding to questions posed to him by the administrative law judge, Dr. Michaux testified that plaintiff was not able to do the work involved in the jobs he previously held, as fire fighter and as a policeman with the Harbor Tunnel. (Tr. 55). He declared, however, that plaintiff retains residual functional capacity to work as a building superintendent, timekeeper, gateman, or toll collector. He further testified that while such jobs require some on-the-job training, plaintiff's past experience compensates a good deal. (Tr. 55). Answering questions by plaintiff's attorney, the vocational expert acknowledged that, generally, physical examinations are required of persons seeking jobs as a gateman or timekeeper, but stated that there are employers in the area who make a special practice of hiring handicapped people. (Tr. 60).

### Conclusions of Law

■ The question before this Court is whether or not there is substantial evidence to support the Secretary's denial of benefits after June 30, 1972. If there is such substantial evidence, then the Court must affirm the Secretary's finding. The fact that the record as a whole might support an inconsistent conclusion is immaterial. The Court must uphold the Secretary's decision if supported by substantial evidence, even though the Court may disagree with that decision. *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence has been defined by the Court of Appeals for the Fourth Circuit as follows:

> . . . evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. *If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."*

*Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966) (emphasis added).

■ In the instant case the reports of both Dr. Borden and Dr. Honick indicate that plaintiff could do some sedentary work. Dr. Borden's report was the result of an examination on April 14, 1972, and

Dr. Honick's report was based on an examination on September 20, 1972. Dr. Borden concluded that while plaintiff should not engage in activities requiring *constant* squatting, standing, or walking, he could sit, stand, change position, and probably drive an automobile. (Significantly, plaintiff testified that he drove his automobile to the hearing before the administrative law judge.) Dr. Honick concluded that plaintiff could not engage in any occupation *requiring prolonged weight bearing*. Plaintiff's own testimony that he drove to the hearing and that helped his wife with the household duties must also be considered. Dr. Michaux, a psychologist and vocational expert, testified that, after reviewing all the exhibits in the case and hearing the testimony, it was his opinion that plaintiff could do such jobs as building superintendent, toll taker, gateman or timekeeper. Dr. Michaux testified further that such jobs were available, that there were often ads in the paper for handicapped persons, and that Sears Roebuck had a policy of hiring the handicapped. (Tr. 60).

Plaintiff, on the other hand, has pointed to the portion of Dr. Honick's report which suggests plaintiff should undergo physical therapy. He has also pointed out that he is considered disabled and unemployable by the State of Maryland. (Tr. 154–55). Plaintiff offered evidence to show that he had attempted to obtain work but was unsuccessful. (Tr. 155).

From the foregoing, it is clear to this Court that the medical reports and vocational expert testimony constitute substantial evidence for the Secretary's conclusion that the plaintiff can engage in substantial gainful work which exists in substantial numbers in the national economy. It is immaterial that no such work is available in the area where plaintiff lives, or that there are no such job vacancies in the national economy, or that plaintiff would not be hired for such work. "Under the amended Act, the courts are not to be concerned about the availability of jobs in the community or even their availability to one with the claimant's impairments, but only with the question of the claimant's ability to engage in gainful activity." *Whiten v. Finch,* 437 F.2d 73, 74 (4th Cir. 1971).

Accordingly, IT IS, this 6th day of May, 1976, by the United States District Court for the District of Maryland, ORDERED:

1. That plaintiff's Motion for Summary Judgment BE, and the same hereby IS, DENIED.

2. That defendant's Motion for Summary Judgment BE, and the same hereby IS, GRANTED.

3. That the Complaint BE, and the same hereby IS, DISMISSED.

4. That the Clerk of Court mail copies of this Memorandum and Order to Herbert J. Arnold, Esquire, counsel for plaintiff, and to Virginia S. Draper, Assistant United States Attorney for the District of Maryland.