Having considered the submissions and the arguments of the parties; and

For the reasons stated in the court's opinion of this date;

IT IS on this 14th day of February, 1991, hereby

ORDERED that THURSTON T. McKELVIN and MARK H. BONNER be suspended from the practice of law in all Courts in the Virgin Islands on March 18, 1991 until all dues owed are paid along with accrued interest on said dues at the statutory rate from the date due to the date of payment.

No costs.

**Robert P. BRYAN, Executor for Estate of Etta Ammon Bryan, SS # 246–52–3958, Plaintiff,**

v.

**UNITED STATES SECRETARY OF HEALTH AND HUMAN SERVICES and The United States of America, Defendants.**

**No. 90–300–CIV–5–F.**

United States District Court, E.D. North Carolina, Raleigh Division.

Dec. 10, 1990.

Paul M. Newby, Asst. U.S. Atty., U.S. Atty. Office, Raleigh, N.C., for defendant.

## ORDER

JAMES C. FOX, Chief Judge.

### STATEMENT OF THE CASE

This case arises under the Medicare program, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* ("Health Insurance for the Aged and Disabled"). Plaintiff is the executor of the estate of a Medicare Beneficiary (the "Beneficiary"). Plaintiff, appearing *pro se,* seeks judicial review of a final decision of the Secretary of Health and Human Services (the "Secretary"), claiming that the Beneficiary was not sufficiently reimbursed by the Secretary for services rendered to the Beneficiary during June of 1987.[1]

In the decision which plaintiff challenges, the Secretary disallowed costs incurred by the Beneficiary pursuant to a stay in a nursing facility following her release from a hospital. The Secretary disallowed these costs on the ground that the Beneficiary received "custodial care" in the nursing facility, rather than "skilled nursing care," and hence was excluded from receiving Medicare benefits therefor.

This matter is now before the court on cross motions for summary judgment. For the reasons set forth below, the court finds that the Secretary's decision is consistent with the express prohibition of the Medicare Act and regulations that Medicare payments not be made to a beneficiary for care in a nursing facility which is merely custodial in nature. The decision of the Secretary is supported by substantial evidence in the record and is in accordance with law. Therefore, the court denies plaintiff's motion for summary judgment and grants defendants' motion for summa-

Robert P. Bryan, Raleigh, N.C., pro se.

---

1. The precise time period in issue and the exact amount of damages which the Plaintiff is claiming are not clearly stated in the Complaint. It appears from plaintiff's statements in the first full paragraph on page two of the *Complaint,* that plaintiff is alleging that Medicare benefits should have been paid to the patient for the period from June 18, 1987, through June 29, 1987. *See* Statement of Facts, *infra.* Based upon this assumption, the amount of Medicare benefits paid to the patient under a waiver, *see infra,* and extrapolating from the nursing facility bill for June 18, 1987, through July 13, 1987, the plaintiff appears to be claiming damages of approximately $753.00.

ry judgment, thereby affirming the administrative decision of the Secretary.

## STATEMENT OF THE FACTS

1. *Operation of the Medicare Program.*

The Medicare program was established to provide a system of health insurance for the aged and disabled. Social Security Amendments of 1965, Pub.L. No. 89–97, § 102(a). The program is divided into two parts. Part A[2], known as the "health insurance program," provides insurance for inpatient hospital and related post-hospital ("extended care") services. 42 U.S.C. § 1395d, 42 C.F.R. § 409.30. To qualify for extended care coverage, a beneficiary must have been a hospital inpatient for at least three days and must have been admitted to a skilled nursing facility for care relating to the hospitalization within thirty days after discharge from the hospital. 42 U.S.C. § 1395x(i).

Under Part A, a beneficiary is entitled to have payment made on his behalf for specific post-hospital extended care services. 42 U.S.C. § 1395d(a). No payment shall be made under Part A, however, where such expenses are for "custodial care." 42 U.S.C. § 1395y(a)(9). With respect to coverage for post-hospital stays at skilled nursing facilities, the Secretary defines "custodial care" as care which fails to meet the requirements for coverage as "skilled nursing care." 42 C.F.R. § 405.310(g).

"Skilled nursing care" is that level of care which, as a practical matter, can only be provided in a skilled nursing facility on an inpatient basis. 42 U.S.C. § 1395f(a)(2)(B). Under the regulations, the concepts of "skilled nursing care" services and "skilled rehabilitative services" are further defined as those services which "(1) [a]re ordered by a physician; (2) [r]equire the skills of technical or professional personnel such as registered nurses, licensed practical ... nurses, physical therapists, occupational therapists, and speech pathologists or audiologists; and (3) [a]re furnished directly by, or under the supervi-

sion of, such personnel." 42 C.F.R. § 409.31(a). Said services are sufficiently complex that they can be safely and effectively performed only by such persons. 42 C.F.R. § 409.32. The regulations proceed to provide many examples of skilled care which make clear that Medicare will pay for a wide variety of services *if needed by the patient. See* 42 C.F.R. § 409.33 (e.g. intravenous or intramuscular injections, gastrostomy feedings, treatment of decubitus ulcers).

Even where the level of care is custodial in nature, Medicare may pay for all or some of the charges under certain circumstances. Where neither the beneficiary nor the nursing home has reason to know that payment will be disallowed, the Secretary may make payment under waiver. 42 C.F.R. § 405.330(a). Payment will only be made for periods of time during which the beneficiary and the provider are unaware of the disallowance. 42 C.F.R. § 405.334.

Under the Medicare program, the providers of covered services enter into agreements with the Secretary to provide Medicare beneficiaries with a broad range of nursing and rehabilitation services; the facilities agree to charge Medicare beneficiaries only the statutorily mandated deductible and coinsurance amounts, 42 U.S.C. § 1395cc(a), and otherwise to receive payment solely from the Medicare Trust Fund. Payment to providers of Part A covered services is made by non-governmental organizations under contract with the Secretary (in this case, Blue Cross and Blue Shield of North Carolina) known as "fiscal intermediaries." 42 U.S.C. § 1395h.

The intermediaries also act as the Secretary's agents in reviewing Medicare claims. *See id.; Athens Community Hosp., Inc. v. Schweiker,* 743 F.2d 1 (D.C.Cir.1984). Subject to certain amount in controversy limitations not here in issue, an individual dissatisfied with the intermediary's decision to deny benefits may obtain an administrative hearing and, later, judicial review. 42

---

2. Part B establishes a voluntary program of "supplemental medical insurance" covering physician's charges and other medical services. 42

U.S.C. §§ 1395k, and 1395*l*. This case is solely concerned with benefits under Part A of the program.

U.S.C. § 1395ff(b), incorporating 42 U.S.C. §§ 405(b), (g). By regulation, the Secretary also has provided for post-hearing administrative review by the Appeals Council; the Council itself initiates this review when appropriate. 42 C.F.R. § 405.724; 20 C.F.R. § 404.967 *et seq.* The Council may affirm, reverse, or modify the opinion of the administrative law judge. 20 C.F.R. § 404.979.

Judicial review of the final decision of the Secretary lies in the United States district courts. 42 U.S.C. § 405(g). Review is on the record, and the reviewing court may affirm, modify, or reverse the final decision of the Secretary, with or without remanding the cause for rehearing. *Id.* On review, however, the Secretary's findings of fact, if supported by substantial evidence, are conclusive. *Id.*

### 2. *The instant Case.*

The Beneficiary, a 90 year old woman, was admitted to Iredell Memorial Hospital in Statesville, North Carolina, on May 21, 1987, complaining of pain in her lower quadrants and weight loss. She was thereafter transferred in stable condition from the Hospital to the Brian Center Nursing Care facility in Statesville on June 10, 1987. She was placed in the "Skill Care" area of the facility.

On June 17, 1987, personnel at the Brian Center informed the Beneficiary's attorney in fact[3] that the care the Beneficiary was receiving did not qualify for Medicare benefits. Her attorney in fact signed the verification of receipt of notice contained in the "Notice of Medicare Noncoverage," acknowledging she had been informed of the nonqualification. The intermediary later confirmed the disallowance of Medicare benefits Beneficiary had received from June 10, 1987, through July 13, 1987. However, the intermediary informed the Beneficiary that Medicare would pay benefits for the expenses incurred from June 10, 1987, through June 17, 1987, under a waiver because neither she nor the provider had any reason to know that benefits would not be paid.

The Beneficiary remained in the "Skill Care" area through July 14, 1987, at which time she was transferred to the "Intermediate Care" area of the Brian Center.

On October 6, 1987, the Beneficiary was readmitted to the Iredell Memorial Hospital, apparently due to her elevated temperature and pulse, and a persistent cough. On October 27, 1987, she was transferred to the Brian Center and admitted to the "Skill Care" area. At that time, her attorney in fact was informed that the level of care commensurate with the Beneficiary's needs would not qualify for Medicare benefits. On October 30, 1987, the Beneficiary died from acute heart failure.

Following the Beneficiary's death, the plaintiff insisted that the Brian Center submit a claim to Medicare for the period from October 27, 1987, through October 30, 1987, even though he knew the Brian Center already had determined that the care during that period had been custodial. Medicare, however, subsequently paid benefits for that period.

While the Beneficiary was still alive, the plaintiff filed a request for reconsideration of the disallowance of benefits for the period from June 10, 1987, through July 13, 1987. This request was denied, whereupon the plaintiff requested an administrative hearing.

An administrative hearing was held before an administrative law judge (the "ALJ") on October 28, 1988, in Raleigh, North Carolina. Appearing at the hearing were the plaintiff and Dr. George Grant, the medical advisor (the "Medical Advisor"). Following the hearing, the ALJ determined that payment could not be made on the Beneficiary's behalf under Part A of the Medicare program for services provided the Beneficiary by the Brian Center from June 10, 1987, through July 13, 1987.

The plaintiff then filed for review of the administrative hearing. Although, the Appeals Council remanded the case to the ALJ for further proceedings with respect

---

**3.** On June 2, 1987, the Beneficiary had executed a "Durable Power of Attorney," appointing her daughter, Lucile B. Lewis, her "true and lawful Attorney in Fact."

to liability, the Council did not disturb the ALJ's findings and decision of December 29, 1988, that the Beneficiary received custodial rather than skilled nursing care. Subsequently, the plaintiff requested another review, which the Appeals Council denied. Thereafter, plaintiff commenced the instant civil action.

## DISCUSSION

■ The standard or scope of review applicable to this case is limited to determining whether the findings of the Secretary are supported by "substantial evidence," *Flack v. Cohen,* 413 F.2d 278 (4th Cir. 1969), and whether the correct legal standards were applied, *Bryant v. Celebrezze,* 229 F.Supp. 329 (E.D.S.C.1964). "Substantial evidence" had been defined by the Court of Appeals for the Fourth Circuit as

evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. *If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."*

*Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966) (emphasis added).

■ In reviewing a case for substantial evidence, a court may not try the case *de novo,* nor resolve conflicts in the evidence, nor decide questions of credibility. *Sokoloff v. Richardson,* 383 F.Supp. 234 (E.D.N.Y.1973); *Carter v. Finch,* 308 F.Supp. 954 (S.D.W.Va.1969), *aff'd,* 421 F.2d 702 (4th Cir.1970). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if it is supported by substantial evidence. *Pruchniewski v. Weinberger,* 415 F.Supp. 112 (D.Md.1973).

Skilled nursing care is comprised of items or services, furnished on a daily basis pursuant to a physician's orders, which as a practical matter require the skills of trained and qualified technical or professional health personnel and must be provided directly by or under the supervision of these skilled personnel. 42 U.S.C. § 1395f(a)(2)(B); 42 C.F.R. § 409.31; Medicare Intermediary Manual § 3132. As dis-

cussed *supra,* these items and services include such services as intravenous or intramuscular injections, gastrostomy feedings, nasopharyngeal and tracheostomy aspiration, and application of antiseptic dressings. 42 C.F.R. § 409.33.

■ Custodial care has been described as assistance to an individual in the activities of daily living, such as help in walking, getting in and out of bed, bathing, dressing, feeding and using the toilet, preparation of special diets and supervision of medication that ordinarily can be self-administered. *Hayner v. Weinberger,* 382 F.Supp. 762 (E.D.N.Y.1974); Medicare Intermediary Manual § 3159. Custodial care does not require the continuing attention of trained medical personnel. *Ridgely v. Secretary,* 475 F.2d 1222, 1223 n. 3 (4th Cir.1973); *Covington v. Secretary of HEW,* [1975 Transfer Binder] Medicare and Medicaid Guide (CCH) para. 27,557 (Sept. 22, 1975).

■ The evidence contained in the record does not show that skilled care was either prescribed or administered. The Beneficiary's regimen, dictated by her physician, did not change during her entire stay at the nursing facility, even though during that period of time she was transferred from the "Skill Care" area to the "Intermediate Care" area. It consisted of assistance in walking and eating, assistance in using a bedpan or going to the toilet, and taking therapeutic vitamins and two prescription medications. The Beneficiary was not on a feeding tube but fed herself, did not have a catheter, had no antiseptic dressings that required changing, and had no heat treatments. Nurses' notes, inscribed on the medical record by persons who, unlike the attending physician, saw the Beneficiary daily, indicated that she received only custodial care. Neither the prescribed regimen nor the medical record show that she received any of the types of care specified as examples of "skilled care" in the regulations, 42 C.F.R. § 409.33, or in the Medicare Intermediary Manual, § 3132. Nor is there any evidence that the Beneficiary had a pre-existing condition or any concurrent conditions which would have required normally custodial care to be provided by skilled medical personnel. *Cf.* Medicare Intermediary Manual § 3132.1(B).

■ Moreover, the Medical Advisor testified during the administrative hearing that in his opinion the evidence in the medical record indicated that the Beneficiary needed and received only custodial care. The opinion of a medical advisor is entitled to probative value. *Weir v. Richardson,* 343 F.Supp. 353 (S.D.Iowa 1972).

The only treatments prescribed for the Beneficiary that conceivably might be considered skilled care were assistance in improving ambulation and bowel and bladder training. *See* 42 C.F.R. § 409.33(b), (c). However, she could walk with assistance at the time she entered the nursing facility in June 1987. The ambulatory therapy prescribed was provided to increase her walking range and strength, not to teach her to walk. Furthermore, her ambulatory regimen was overseen by a physical therapy aide, not by or under the supervision of a trained physical therapist. The Beneficiary's bowel and bladder training consisted of providing her the use of a bedpan every two hours, and as her strength and mobility increased, assisting her to the toilet. Assistance in getting to the toilet, as well as assistive walking, do not constitute special rehabilitative services or skilled care. 42 C.F.R. § 409.33(d)(11), (13). *See also* Medicare Intermediary Manual § 3132.3.

■ In the instant case, the only evidence that the Beneficiary may have required skilled nursing care were the check marks placed on pre-printed forms by the attending physician on June 12, 1987, and July 2, 1987. Where the level of care is at issue, the attending physician's opinion as to the level of care required by a patient's needs ordinarily is given great weight *if* there is no evidence to the contrary. *See Ridgely v. Secretary,* 475 F.2d 1222. *Cf. Goldrich v. Richardson,* [1972 Transfer Binder] Medicare and Medicaid Guide (CCH) para. 26,885 at 9,943 (Jan. 25, 1974) ("attending physician has a potential interest in outcome of a Medicare payments case, and, therefore, his opinions are neither 'controlling' nor of 'great weight,' but merely entitled to be weighed along with all the other evidence"). Even when asked by the plaintiff to provide further elaboration to the ALJ regarding his authoriza-

tions, the attending physician merely responded with the vague, conclusory statement that "[w]e asked for a bed in a skilled nursing home."

■ In his complaint, plaintiff appears to assert that because Medicare benefits were paid for the Beneficiary's second stay in the nursing facility's "Skill Care" area from October 27, 1987, through October 30, 1987 (the "second stay"), Medicare benefits should have been paid for the period from June 10, 1987, through July 13, 1987 (the "first stay"). Nothing in the record supports this contention. From what little evidence the record contains regarding the Beneficiary's condition and treatment during the second stay, plaintiff would have the court infer that the medical reasons for the Beneficiary's second stay, as well as the treatment prescribed and received, were exactly the same as the regimen and treatment she received during the first stay. From this unsupported inference, plaintiff would have this court conclude that Medicare benefits should also have been paid for the care she received from June 10, 1987, through July 13, 1987.

Plaintiff has the burden of providing information for the record to corroborate his claims. *Bernstein v. Ribicoff,* 192 F.Supp. 138 (E.D.Pa.1961), *aff'd,* 299 F.2d 248 (3d Cir.), *cert. denied,* 369 U.S. 887, 82 S.Ct. 1161, 8 L.Ed.2d 288 (1962). This plaintiff has failed to do. The Beneficiary's symptoms and the care she received during the first stay were well documented in the record, as were the reasons for the disallowance of Medicare benefits therefor. There is a dearth of information in the record regarding the Beneficiary's second stay. Although the record contains a notice to the Beneficiary that Medicare benefits were paid based on skilled nursing care during the second stay, the record contains no further information as to the type of care the attending physician prescribed for the Beneficiary during that time period, nor are there any nurses' notes or nursing facility records describing the treatment received.

Only one other document in the record sheds any light on the Beneficiary's second stay. Just prior to her second admission to the hospital, the nurses' notes indicate that

the Beneficiary had an elevated temperature and pulse rate, as well as a persistent cough. Not only are these symptoms dissimilar to the weight loss and lower quadrant pain noted prior to her first hospital admission, they were entered on the medical record some twenty days before she was readmitted to the nursing facility. These symptoms, therefore, may not even correlate to the Beneficiary's condition during her second stay.

Thus, the fact that the intermediary determined that Medicare benefits should be paid for the treatment the Beneficiary received during her second stay in no way suggests that benefits should have been paid for the period from June 10, 1987, through July 13, 1987.

### CONCLUSION

For the foregoing reasons, the court thereby DENIES plaintiff's motion for summary judgment and GRANTS defendants' motion for summary judgment, thereby affirming the decision of the Secretary.

SO ORDERED.