Virginia C. MELSON, on Behalf of
James MELSON, Plaintiff,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES, Defendant.

No. CIV–86–299C.

United States District Court,
W.D. New York.

Nov. 7, 1988.

Legal Services for the Elderly (William
W. Berry, of counsel), Buffalo, N.Y., for
plaintiff.

Dennis C. Vacco, U.S. Atty. (Paul J. Campana, of counsel), Buffalo, N.Y., for defendant.

CURTIN, District Judge.

The plaintiff has brought this action against the Secretary of Health and Human Services ("Secretary") on behalf of her husband pursuant to 42 U.S.C. §§ 405(g), 1395ff(b). She is seeking review of the Secretary's determination that her husband is not entitled to Medicare benefits for acute inpatient hospital care that he received after suffering a heart attack and resulting brain damage. The Secretary ruled that once the treating physician had determined that the plaintiff's husband could receive the requisite level of care at a skilled nursing facility ("SNF"), the plaintiff's refusal to allow her husband's transfer to such a facility when beds were available rendered him ineligible for reimbursement of the costs he incurred while at the hospital.

On December 6, 1984, James Melson, the plaintiff's husband, suffered a heart attack shortly after shoveling snow. Mr. Melson, who was seventy-six years-old at the time, also suffered brain damage as a result of the heart attack, and was hospitalized at Kenmore Mercy Hospital ("KMH"). While at the hospital, Mr. Melson initially required acute inpatient care.

On December 26, 1984, Mr. Melson's treating physician, Dr. William C. Baker, determined that Mr. Melson was no longer in need of acute care, and that he could be discharged to an SNF (Transcript ("T") at 151). In a letter dated the same day, the Peer Review Organization notified Mr. Melson that he would no longer receive Medicare payments for inpatient care at KMH beginning December 28, 1984 (T at 53–55). Although she could not remember the precise date, the plaintiff acknowledged that she learned of the termination of benefits in late December (T at 11–13, 15, 321–22, 329–30, 345; see also T at 151–52).

When a hospital social worker contacted her on December 27 about transferring her husband to an SNF, the plaintiff stated that she only was interested in transferring him to a skilled nursing bed at KMH. Significantly, when she was told that no skilled nursing beds were available at KMH, the plaintiff told the social worker that she was willing to pay for inpatient acute care at KMH until a bed became available at the hospital's SNF (T at 151–52). The record indicates that the plaintiff subsequently was told of available skilled nursing beds at other facilities but that she continued to resist, preferring instead to try to transfer her husband to the Veterans Administration Hospital ("VAH") in Buffalo (T at 152, 312–14, 318–19). Mrs. Melson became so determined to have her husband placed in the VAH that she even refused a subsequent SNF bed opening at KMH, indicating that she did not want her husband moved until she received a reply from the VAH (T at 153, 315–16).

On January 22, 1985, Mr. Melson was discharged from KMH and admitted to the VAH. The plaintiff is attempting to recover the cost of her husband's inpatient care at KMH from December 28, 1984, to January 22, 1985.

On September 26, 1985, a hearing was held before an Administrative Law Judge ("ALJ") to determine the merits of the plaintiff's claim. In an opinion dated October 28, 1985, the ALJ ruled that the cost of Mr. Melson's inpatient care during the period in question was not covered by Medicare. The ALJ found that beginning December 28, 1984, Mr. Melson had received primarily custodial care and, consequently, that his treatment was not covered by Medicare under 42 U.S.C. § 1395y(a)(9) (T at 12–18). Because he had found that Mr. Melson did not require skilled nursing care after December 27, the ALJ did not address the issue of whether a good faith effort had been made to place Mr. Melson in an SNF (T at 17).

Pursuant to a stipulation between the parties, the case was remanded to the Secretary to determine whether any skilled nursing beds had been available after December 27, 1984, and, if not, whether the plaintiff had received a level of care at KMH that was covered by Medicare. Following a second hearing, a different ALJ found that skilled nursing beds had been available at two facilities on December 28, 1984. The ALJ also noted that a third skilled nursing bed had been available as of

December 31, 1984 (T 284). The ALJ found that the plaintiff's refusal to accept placement at one of the facilities precluded Medicare payments under 42 U.S.C. § 1395x(v)(1)(G) for services provided by KMH after December 27, 1984. The ALJ rejected a claim by Dr. Baker, contained in a letter dated April 25, 1985, that no skilled nursing had been available as of December 27, 1984 (T at 262, 278–87).

The plaintiff has moved for summary judgment, contending that the Secretary, by ruling that skilled nursing beds had been available after December 27, 1984, failed to give proper deference to the treating physician's statement, presumably offered as a certification pursuant to 42 C.F.R. § 405.1627(b), that no skilled nursing was available at the time it was determined that Mr. Melson no longer needed acute inpatient care. The plaintiff also argues that, in any event, the ALJ's determination that SNF beds had been available is not supported by substantial evidence, claiming that the record does not establish that the plaintiff's husband had been offered a bed at an SNF. The defendant responds that there is no support in the record for Dr. Baker's claim that no skilled nursing beds had been available, and that the Secretary's decision is supported by substantial evidence. The defendant argues that he is, therefore, entitled to judgment on the pleadings.

### DISCUSSION

■ The Social Security Act provides in relevant part:

In any case in which a hospital provides inpatient services to an individual that would constitute post-hospital extended care services if provided by a skilled nursing facility and a quality control and peer review organization ... determines that inpatient hospital services for the individual are not medically necessary but post-hospital extended care services for the individual are medically necessary and such extended care services are not otherwise available to the individual ... at the time of such determination, payment for such services

provided to the individual shall continue to be made under this subchapter.... 42 U.S.C. § 1395x(v)(1)(G)(i) (1983 & Supp. 1988). Before the Secretary can be required to make such payments, a physician must certify that such services were required, 42 U.S.C. § 1395f(a)(2)(B) (Supp. 1988), and that no bed was available in a participating SNF. 42 C.F.R. 405.1627(b) (1987). The certification is not binding on the Secretary, *see Giove v. Weinberger,* 380 F.Supp. 364, 373 (D.Md.1974), and the Secretary's finding regarding the availability of beds must be deemed conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g) (1983).

■ In the present case, it appears the Secretary's finding that several skilled nursing beds were available after December 27, 1984, is supported by substantial evidence. The record indicates that by December 28, 1984, a hospital social worker had located open skilled nursing beds at two separate facilities, but that the plaintiff refused to authorize her husband's transfer because she wanted to try to transfer her husband to the VAH (T at 152, 312–14, 318–19). Three days later the plaintiff refused an offer of a skilled nursing bed at KMH, again stating that she preferred to await the VAH's decision. Indeed, the plaintiff was so determined to have her husband admitted to the VAH that she described it as her "first and most primary" concern (T at 312–13; *see also* T at 314, 319, 349). Furthermore, during her testimony Mrs. Melson acknowledged both that she had been told of available skilled nursing beds and that she had refused her husband's transfer to one because she had been awaiting a decision by the VAH (T at 152–53, 312–19). The record also clearly indicates that the plaintiff was well-aware that Medicare would not cover her husband's inpatient care at KMH while she awaited the decision (T at 151–52).

There is, consequently, no support in the record for Dr. Baker's claim, contained in a letter dated approximately four months later, that no skilled nursing was available at the time he determined that Mr. Melson no longer required acute inpatient care. It is

not clear from the record whether Dr. Baker was aware of the bed openings discovered by the social worker, and he may simply not have known that these beds were available. In any event, the proffered certification, which appears defective for failing to state why it was delayed, *see* 42 C.F.R. § 405.1625(e), merely states that hospitalization was "probably" required.

The plaintiff cites several cases to support her claim that Dr. Baker's statement concerning the availability of skilled nursing beds should be given substantial weight (*see* Plaintiff's Memorandum at 9). Those cases, however, are distinguishable because they deal with the deference that should be given to a treating physician's diagnosis concerning the appropriate level of care for a patient. This case, by contrast, involves the factual question of whether skilled nursing beds were available at the time the treating physician determined that Mr. Melson no longer required acute inpatient care.

The plaintiff argues, however, that Mr. Melson was never formally approved for or offered a bed at the two skilled nursing facilities that were known to have openings on December 28, 1984 (*see* Plaintiff's Memorandum at 15–16). The plaintiff made clear, however, that she would not consider transferring her husband to an SNF until she learned of the VAH's decision, and she apparently refused even to apply to either of the two facilities. Furthermore, the plaintiff, who has the burden of proof, *Friedman v. Secretary of the Department of Health & Human Services*, 819 F.2d 42, 45 (2d Cir.1987); *Morton v. Heckler*, 586 F.Supp. 110, 111 (W.D.N.Y.1984), does not even suggest that her husband would not have been accepted at either of the two facilities. In any event, the notes of the hospital social worker indicate that Mr. Melson was offered a skilled nursing bed at KMH on December 31, 1984 (T at 153; *see also* T at 315–16).

In a case involving extremely similar facts, the Seventh Circuit upheld the Secretary's denial of reimbursement for hospital costs. In *Lerum v. Heckler*, 774 F.2d 210 (7th Cir.1985), a patient's family delayed her transfer to an SNF because they preferred other facilities closer to the patient's hometown at which there were no openings. The Seventh Circuit held that the family's preference for those particular facilities did not justify payment for continued acute inpatient care after the patient's need for skilled nursing care had been certified. *Id.* at 213–14.

In sum, the plaintiff has failed to show that no skilled nursing beds were available within the meaning of 42 C.F.R. § 405.1627(b) between December 28, 1984, and January 22, 1985, and the record establishes that the Secretary's decision is supported by substantial evidence. Accordingly, the defendant's motion is granted and the plaintiff's motion is denied.

SO ORDERED.